ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Lael Al Sahab & Co. | ) ASBCA Nos. 58344, 59009 |
| | ) |
| Under Contract No. W91GFC-07-M-0399 | ) |

APPEARANCE FOR THE APPELLANT:     Mr. Alie Sufan
                                  Owner

APPEARANCES FOR THE GOVERNMENT:     Raymond M. Saunders, Esq.
                                     Army Chief Trial Attorney
                                    CPT Vera A. Strebel, JA
                                    Erica S. Beardsley, Esq.
                                     Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MELNICK ON THE GOVERNMENT'S MOTIONS TO DISMISS FOR LACK OF JURISDICTION

In these appeals, Lael Al Sahab & Co. (Lael Al Sahab) seeks payment for the government's alleged use of an additional truck not contemplated in the contract. The government moves to dismiss the appeals for lack of jurisdiction.

## STATEMENT OF FACTS (SOF) FOR THE PURPOSES OF THE MOTIONS

1. The Army MNF-I/Regional Contracting Center (Al-Taji) awarded Contract No. W91GFC-07-M-0399 to Lael Al Sahab on 18 April 2007. Under the contract, appellant was to provide various motor vehicles for 6 month leases. Contract Line Item Number (CLIN) 0004 was for the lease of 11 small pickup trucks at a price of $1,800 per truck per month. The government had the option to extend the term of the contract for an additional six months. (R4, tab 1 at 1-2, 8 of 11)

2. Lael Al Sahab was to deliver the vehicles to Camp Taji, Iraq. Lael Al Sahab was required to submit a Vehicle Inspection and Receiving Report (VIRR) for each vehicle prior to delivery. The VIRRs included identifying information for each vehicle and were to be signed by the receiving official. (R4, tab 1 at 4 of 11)

3. Lael Al Sahab was required to submit invoices on a monthly basis to the end-user and the contracting officer (CO). Upon receipt of the invoice, the end-user was to prepare a Material Inspection and Receiving Report, Form DD250, and provide a copy to the CO within 48 hours. The contracting office would then prepare the appropriate payment package for the finance office. (R4, tab 1 at 5-6 of 11)

4. The contract incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (SEP 2005) (R4, tab 1 at 8 of 11). Paragraph (d) of FAR 52.212-4 stated that the contract was subject to the Contract Disputes Act of 1978 (CDA), as amended.

5. Beginning in May 2007, Lael Al Sahab delivered numerous vehicles required under the contract. The vehicles were identified on the VIRRs by make, model, and chassis number. (R4, tabs 2, 3, 6, 8, 12)[1]

6. In a 12 August 2007 email, appellant stated that the government had 12 pickup trucks (R4, tab 19). Appellant again referenced an extra pickup truck and a 12th pickup truck in two 15 October 2007 emails to the government (R4, tabs 22, 23).

7. Modification No. P00003 extended the term of the contract through 21 December 2007 (R4, tab 26). The government returned the leased vehicles to Lael Al Sahab by 8 January 2008 (R4, tabs 32, 34).

8. The record contains appellant's monthly invoices for the lease of the vehicles from 22 May 2007 through 8 January 2008. The invoices identify the specific vehicles by type and chassis number. All of the monthly invoices reference 11 pickup trucks. (R4, tabs 15, 18, 20[2], 21, 24, 25, 28, 31) Of the chassis that became an issue, (*see* SOF ¶ 14) only chassis no. 53831 appears on the invoices.

9. By email dated 14 January 2008, appellant notified CO Tracy A. Stoughton that "your unit been using an extra pick up for 5 months (the contract was for 11 small Pick up)."[3] Appellant also stated that it was preparing an invoice. The hard copy of the email in the record contains handwritten notes asking: "Who told him to send this xtra vehicle? Did MAJ Holmes know about vehicle?" (R4, tab 32)

10. In a 20 January 2008 email to CO Stoughton, appellant stated that it was "sending our Invoice for the Vehicle rent until the 8th on Jan." Appellant attached two documents to the email. Handwritten notes on the hard copy of the email identify one of the documents as relating to "Extra Vehicle $9,240.00." (R4, tab 33) The record contains a copy of Invoice No. 2005CCIE-N00798, which is dated 20 January 2008 and addressed to CO Stoughton. The invoice contained the following description: "Extra Pick up been used for 5ive month Chassi no 53831 (the contract was for 11 small pick

---

[1] The VIRRs in the record do not necessarily represent all vehicles leased under the contract.

[2] The invoice at Rule 4, tab 20 is largely illegible, but it looks like 11 pickup trucks are listed.

[3] Syntax and punctuation are in original quotes.

up)." The invoice sought payment of $9,240.00 for the use of the alleged extra pickup truck for 154 days at a rate of $60 per day. (R4, tab 37) We conclude that this invoice was submitted to CO Stoughton with appellant's 20 January 2008 email.

11. In a 20 January 2008 email to MAJ Holmes regarding the contract, CO Stoughton stated: "There is also the issue of an 'extra vehicle' that I'm very displeased with" (R4, tab 34). In a subsequent email the same day to appellant, with copy to MAJ Holmes, CO Stoughton wrote:

> This is regarding the issue of the "extra vehicle". I need to know from the both of you:
> --Why you gave us an extra vehicle
> --Who from the contracting office authorized this extra vehicle--How long the customer has known they've had this extra vehicle
>
> As it stands right now, if nobody from the contracting office authorized this extra vehicle, then you are not authorized payment for this extra vehicle.

(R4, tab 35) Appellant responded the same day stating that the government knew about the extra pickup truck (R4, tab 36).

12. By email dated 10 September 2012, a contract specialist with the Army Contracting Command – Rock Island contacted appellant and requested that it execute a release of claims "certifying that the contract has been paid in full." Appellant responded by email dated 11 September 2012 stating: "As you can see we had an extra vehicle they used for 5 months but they did not pay us...." (R4, tab 42) Appellant resubmitted Invoice No. 2005CCIE-N00798 on 21 September 2012 (58344, gov't mot., Wysoske aff. ¶ 5).

13. CO Joan Wysoske issued a 29 September 2012 contracting officer's final decision regarding Invoice No. 2005CCIE-N00798 in which she "recommend[ed]" that the invoice not be paid because the pickup truck with chassis no. 53831 had been listed on previous invoices that had been paid in full. She concluded that appellant had "failed to provide appropriate documentation for additional payment." (R4, tab 44 at 1)

14. Appellant appealed by email dated 2 October 2012, which the Board docketed as ASBCA No. 58344. Along with its notice of appeal, appellant submitted a revised copy of Invoice No. 2005CCIE-N00798. As with the previous version, the revised copy sought $9,240 for the use of an extra pickup truck for 154 days. The revised invoice, however, referenced chassis no. 003326 instead of chassis no. 53831. The revised invoice also included an additional demand of $150,000 as a "Claim for delay and not pay us on time for almost 5 years."

3

15. By motion dated 19 February 2013, the government moved to dismiss ASBCA No. 58344, arguing that appellant had failed to submit a claim to the CO. Appellant responded to government trial counsel and the Board by letter dated 25 April 2013 explaining when and how the government was provided an extra truck.

16. By email dated 24 May 2013, appellant submitted a second letter dated 25 April 2013, addressed to government counsel but also sent to the Board, stating:

> I felt I was unfair with my claim. As you know and it is very clear I have outstanding Balance for the extra vehicle amount $9250 where I claimed for this amount since 2007. If you don't wish to consider my claim but at least I can accept to get paid my balance due Since four years.

By this letter it appears appellant may have withdrawn the $150,000 demand for delay in payment (*see* SOF ¶ 14) from ASBCA No. 58344.

17. In a 28 June 2013 Order, the Board noted that the issues raised in the government's motion to dismiss ASBCA No. 58344 might be resolved, without a decision on the motion, if appellant were to submit a claim to the CO meeting the requirements of the CDA and file a new appeal should the claim be denied or deemed denied by the government. The Board therefore directed appellant to indicate whether it would attempt to submit a claim to the CO.

18. By email to the Board dated 5 July 2013, appellant submitted multiple documents in apparent response to the Board's Order. Among the documents submitted by appellant was a third copy of Invoice No. 2005CCIE-N00798. Like the copy submitted with appellant's notice of appeal in ASBCA No. 58344, this copy of the invoice sought $9,240 for the use of an extra pickup truck for 154 days and referenced chassis no. 003326; however it omitted the $150,000 demand. This third copy of the invoice was also signed by appellant's representative, and included the following statement: "the claim is made in good faith; the supporting data are accurate and complete."

19. By reply dated 26 August 2013, the government renewed its motion to dismiss, arguing that appellant's three invoices were three substantively different routine requests for payment, not claims under the CDA (58344, gov't reply at 3).

20. In a 9 October 2013 Order, the Board directed appellant, to the extent it considered its 5 July 2013 submission to be a claim, to notify the Board whether it intended to file a new appeal based upon the submission.

4

21. In response, appellant submitted a 15 October 2013 letter to the Board and government counsel in which it stated that it "would Like to claim for my outstanding Due Payment since 2008 for the amount $9,240" (ASBCA No. 59009, notice of appeal). The Board determined that the letter was a notice of appeal, and docketed the matter as ASBCA No. 59009 and consolidated it with ASBCA No. 58344.

22. By motion dated 24 February 2014, the government moved to dismiss ASBCA No. 59009, arguing that appellant's 15 October 2013 letter was not a claim because it was not submitted to the CO (59009, gov't mot. at 3). Appellant did not respond to the government's motion despite two opportunities to do so.

## DECISION

Appellant, as the proponent of the Board's jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Hanley Indus., Inc.*, ASBCA No. 58198, 14-1 BCA ¶ 35,500 at 174,015. The facts supporting jurisdiction are subject to our fact-finding upon a review of the record. *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,016; *Green Dream Grp.*, ASBCA No. 57413 *et al.*, 12-2 BCA ¶ 35,145 at 172,520.

The Board's jurisdiction under the CDA is dependent upon the contractor's submission of its claim to the CO and a final decision on, or the deemed denial of, the claim. 41 U.S.C. §§ 7103-7105; *Mawaraa AlBihar Co.*, ASBCA No. 58585, 13 BCA ¶ 35,426 at 173,783. Because the CDA does not define the term "claim," we look to the definition in the FAR. *See, e.g., Taj Al Safa Co.*, ASBCA No. 58349, 13 BCA ¶ 35,278 at 173,158. The FAR defines a "*Claim*" as follows:

> *Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

FAR 2.101. A claim need not be submitted in any particular format; the contractor need only submit "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). We determine whether a contractor's communication is a CDA claim on a case-by-case basis and apply a common sense

5

analysis. *Todd Pac. Shipyards Corp.*, ASBCA No. 55126, 06-2 BCA ¶ 33,421 at 165,687. In determining the sufficiency of a claim, we may examine the totality of the correspondence between the parties. *Vibration & Sound Solutions Ltd.*, ASBCA No. 56240, 09-2 BCA ¶ 34,257 at 169,270.

ASBCA No. 58344

The government moves to dismiss ASBCA No. 58344 for lack of jurisdiction on the ground that appellant failed to submit a proper CDA claim. In its original motion, the government merely states that there "is no record that appellant filed a claim prior to filing a notice of appeal or complaint with the Board" (58344, gov't mot. at 2). The government elaborates in its reply, contending that appellant's invoices are mere routine requests for payment that do not rise to the level of CDA claims (58344, gov't reply at 3).

Whether a request for payment is a routine or a non-routine request is a factual question dependent on the circumstances in which the request arose. *Parsons Global Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012). Routine requests for payment are those "submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance." *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1542 (Fed. Cir. 1996). Non-routine requests for payment, by contrast, seek compensation "for unforeseen or unintended circumstances." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577 (Fed. Cir. 1995) (en banc). Although FAR 2.101 identifies invoices as examples of routine requests for payment, that a contractor submitted its request for payment as an invoice is not dispositive. *See RO.VI.B. Srl*, ASBCA No. 56198, 09-1 BCA ¶ 34,068 at 168,457 (finding invoices to be claims); *Am. Serv. & Supply, Inc.*, ASBCA No. 50606, 00-1 BCA ¶ 30,858 at 152,335 ("In light of these facts, Invoice No. 1345 could not be considered a routine request for payment"). A common thread of non-routine requests for payment "is the presence of some unexpected or unforeseen action on the government's part that ties it to the demanded costs." *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58492, 14-1 BCA ¶ 35,713 at 174,866-67 (quoting *Parsons*, 677 F.3d at 1171).

Under CLIN 0004 of the contract, Lael Al Sahab was required to provide the government 11 small pickup trucks for lease (SOF ¶ 1). The contract required Lael Al Sahab to invoice on a monthly basis (SOF ¶ 3). Appellant's monthly invoices reference only 11 pickup trucks (SOF ¶ 8). By email dated 14 January 2008, appellant notified CO Stoughton that the government had used an extra truck for 5 months, noting that the contract was only for 11 trucks (SOF ¶ 9). Less than a week later, appellant submitted Invoice No. 2005CCIE-N00798 to CO Stoughton seeking $9,240.00 as compensation for the government's use of an extra pickup truck for 154 days (SOF ¶ 10). The invoice sought payment for the provision of a pickup truck not contemplated by the contract. CO Stoughton's 20 January 2008 response, inquiring as to who authorized the extra

6

vehicle (SOF ¶ 11), recognized the non-routine nature of appellant's request. Therefore, Invoice No. 2005CCIE-N00798 was not a routine request for payment.

The invoice also otherwise meets the definition of a claim. The invoice is a written demand seeking, as a matter of right, the payment of money in a sum certain. *See Reflectone*, 60 F.3d at 1575. Invoice No. 2005CCIE-N00798 is similar to the letter in *Tecom, Inc. v. United States*, which the court determined met the requirements of a claim. 732 F.2d 935, 937 (Fed. Cir. 1984) ("[The letter] first reiterated that appellant viewed the newly demanded bus service as beyond the contract's requirements, and then specifically asked 'compensation of $11,000.04 per year, to be billed at $916.67 per month.' That was quite enough specificity for the claim, under both statute and regulation."). CO Wysoske treated Invoice No. 2005CCIE-N00798 as a claim and issued a final decision thereon (SOF ¶ 13).

Appellant, however, does not pursue the claim presented to the COs in this appeal. As submitted to CO Stoughton and CO Wysoske, Invoice No. 2005CCIE-N00798 cited chassis no. 53831 (SOF ¶¶ 10, 12-13). On appeal, however, appellant's submissions to the Board refer to a truck with chassis no. 003326 (SOF ¶ 14). "We lack jurisdiction over claims raised for the first time on appeal, in a complaint or otherwise." *The Pub. Warehousing Co.*, ASBCA No. 56022, 11-2 BCA ¶ 34,788 at 171,227. "Whether a claim before the Board is new or essentially the same as that presented to the CO depends upon whether the claims derive from common or related operative facts." *Dawkins Gen. Contractors & Supply, Inc.*, ASBCA No. 48535, 03-2 BCA ¶ 32,305 at 159,844. If the Board "will have to review the same or related evidence to make its decision, then only one claim exists." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). Appellant's reliance on a different chassis number on appeal introduces a different, unrelated material operative fact not presented to the COs. Each vehicle provided by Lael Al Sahab was accompanied by separate documentation identifying the vehicle by, *inter alia*, chassis number (SOF ¶¶ 2, 5). Lael Al Sahab's monthly invoices similarly identified the specific trucks for which it sought payment by chassis number (SOF ¶ 8). Determining whether appellant is entitled payment for the provision of an allegedly extra truck requires a review of the documentation related to the specific truck. Appellant's claim as to chassis no. 003326 is therefore a different claim than its claim as to chassis no. 53831. Its claim for chassis no. 53831 was denied because it had been listed on prior invoices that had been paid (SOF ¶ 13). Appellant has not pursued its claim as to chassis no. 53831 on appeal, and we consider it abandoned. Put simply, whether appellant was paid for chassis no. 003326 involves different operative facts than whether it was paid for chassis no. 53831. Because appellant did not submit its claim as to chassis no. 003326 to a CO prior to its appeal to the Board, we lack jurisdiction to entertain it.

7

While appellant may have withdrawn its demand for $150,000 from this appeal (SOF ¶ 16), there is no evidence that appellant submitted its $150,000 demand to a CO prior to its appeal to the Board. Accordingly, we also dismiss this portion of the appeal.

ASBCA No. 59009

ASBCA No. 59009 arises from appellant's 5 July 2013 submission. The government moves to dismiss ASBCA No. 59009 for lack of jurisdiction, arguing that appellant failed to submit a claim to the CO (59009, gov't mot. at 3).

The Board's 28 June 2013 Order informed the parties that appellant might be able to resolve the issues raised in the government's motion to dismiss ASBCA No. 58344 by filing a claim with the CO (SOF ¶ 17). Although appellant knew the identity of the current CO, appellant did not file a claim with CO Wysoske. Appellant's 5 July 2013 submission to the Board cannot substitute as a submission to the CO. Appellant's failure to submit a claim to the CO as required by the CDA deprives us of jurisdiction. *Bruce E. Zoeller*, ASBCA No. 55654, 07-1 BCA ¶ 33,581 at 166,347. We therefore also dismiss ASBCA No. 59009.

## CONCLUSION

The government's motions to dismiss for lack of jurisdiction are granted.

Dated: 13 November 2014

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

8

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58344, 59009, Appeals of Lael Al Sahab & Co., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9