# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- )<br>)<br>Nexagen Networks, Inc. )<br>)<br>Under Contract No. W15P7T-13-D-E077 ) | ASBCA No. 60641 |

APPEARANCE FOR THE APPELLANT:                David A. Rose, Esq.
                                                                         Rose Consulting LLC
                                                                         Valdosta, GA

APPEARANCES FOR THE GOVERNMENT:       Raymond M. Saunders, Esq.
                                                                         Army Chief Trial Attorney
                                                                         MAJ Stephen P. Smith, JA
                                                                         Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Appellant, Nexagen Networks, Inc. (Nexagen) has appealed the contracting officer's (CO's) denial of its certified claim. The Army has moved for partial summary judgment on a portion of the claim in which Nexagen seeks $37,597,526.94 in "compensatory consequential damages." We grant the motion in part.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following facts are undisputed.

On May 31, 2013, the Army awarded Nexagen Contract No. W15P7T-13-D-E077 (the contract) a multiple award indefinite-delivery/indefinite-quantity contract to provide software and systems engineering services (app. resp. at 3; R4, tab 1). The contract contains various clauses, including Federal Acquisition Regulation (FAR) 52.249-6, TERMINATION (COST-REIMBURSEMENT) (MAY 2004), ALTERNATE IV (SEP 1996) (R4, tab 1 at 133).

On February 13, 2015, the Army awarded Nexagen task order KX01 for "Data Strategy Service and Software Support" (the task order). The task order had a one-year base period with a one-year option. (App. resp. at 4; R4, tab 2)

With respect to its value, the task order provided:

BASE PERIOD

| | |
|---|---|
| Estimated Labor Cost | $ 18,170,944.36 |
| Fixed Fee | $    908,547.22 |
| Estimated Travel & ODC | $  3,881,775.40 |
| Total | $ 22,961,266.98 |

OPTION PERIOD

| | |
|---|---|
| Estimated Labor Cost | $ 18,534,362.29 |
| Fixed Fee | $    926,718.11 |
| Estimated Travel & ODC | $  3,887,296.90 |
| Total | $ 23,348,377.30 |

| | |
|---|---|
| Grand Total | $ 46,309,644.28 |

(App. resp. at 5; R4, tab 2 at 2)

During the less than three-month period that Nexagen performed the task order, the Army sent Nexagen deficiency notices and a cure notice (app. resp. at 6-7; R4, tabs 5, 8-9). On May 4, 2015, the CO notified Nexagen that he was terminating the task order for default due to Nexagen's failure to perform (app. resp. at 7; R4, tab 13). The CO quickly changed course, however, and on May 15, 2018, notified Nexagen that he was changing the termination to a "no-cost termination for convenience" (app. resp. at 7; R4, tabs 14-15).

On December 22, 2015, Nexagen submitted a certified claim to the CO. It sought $37,597,526.94 for "Compensatory Consequential Damages: Breach of implied covenant of good faith and fair dealing," and $2,646,853 for "Compensatory Expectation Damages: Breach of contract based upon wrongful termination." (App. resp. at 8-9; R4, tab 20 at 9) For ease of reference, we will refer to the former as the "consequential damages claim" and the latter as the "expectation damages claim."

Nexagen's certified claim is 304 pages long. Pages 1-9 consist of a cover, table of contents, narrative, and certification (R4, tab 20). Pages 10-304 consist of various spreadsheets and other documents that purport to document the $2.6 million in expectation damages. The biggest single component of the expectation damages claim is the fixed fee (or lost profits) of $1,835,265.33 for the base and option years of the contract (*id.* at 11).[1]

---

[1] $908,547.22 (base year) + $926,718.11 (option year) = $1,835,265.33.

By contrast, there is nothing in the claim that itemizes the $37.6 million consequential damages claim.[2] The claim does allege, however, that Nexagen suffered:

- Partnership cancellation by CACI due to Loss of Confidence with Nexagen on an $80M acquisition on which CACI is the incumbent

- Emboldened industry concerns about Nexagen ability to effectively perform and partner as a result of the government's actions

- Potential for biased TOR submission evaluations by ACC acquisition and legal team on future solicitations

- Loss of $35M+ in revenue and Technical Expertise related to Predictive Analytics, Cloud Computing and Messaging Technologies

- $48M in gross revenue Good Will Lost Due to Breach of Contract

- $10M in OH, G&A and Profit

(R4, tab 20 at 8)

The CO issued a final decision denying the claim on May 6, 2016 (app. resp. at 10; R4, tab 22). With respect to the fixed fee Nexagen sought in the expectation damages claim, the CO denied it for the option year because "there is no entitlement to unexercised options." For the base year fee of $908,547.22, she granted a prorated $151,424.54 to reflect Nexagen's actual performance period, and denied the remainder. (R4, tab 22 at 2) As for the consequential damages claim, the CO stated "Nexagen's claim for damages for breach of contract in the amount of $37,597,526.94 are denied in full as they are unsupported and not provided for under FAR 49.3" (*id.*).

Nexagen has submitted as exhibit 3 to its response to the government's motion a spreadsheet that for the first time itemizes its consequential damages claim:

---

[2] Nexagen disputes the Army's assertion that the claim failed to itemize the consequential damages claim. Its only basis for the denial is that the CO did not seek clarification. (App. resp. at 9) We find that Nexagen has failed to properly address the government's assertion of fact and we consider it undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2).

3

| Nexagen Pro Forma for Termination of SSESR-2031 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Description | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total | Remarks |
| **Count II Breach of Contract (SSESR-2031 DS4 Award)** | | | | | | | |
| Lost Fee | $ 908,547 | $ 926,718 | | | | $ 1,835,265 | Two years of Lost ·Gross Profit (16%) on the DS4 Contract. |
| Lost G&A | $ 1,886,284 | $ 1,924,009 | | | | $ 3,810,293 | |
| Lost OH | $ 873,120 | $ 890,582 | | | | $ 1,763,702 | |
| | | | | | Subtotal | $ 7,409,260 | |
| **Count I Breach of implied Covenant of good faith dealing** | | | | | | | |
| Loss on Corporate Market Value | $5,451,283.32 | $5,560,308.66 | | | | $ 11,011,592 | Six times Fee for each year |
| | | | | | Subtotal | $11,011,592 | |
| **Count I Breach of implied Covenant of good faith dealing** | | | | | | | |
| "No Bid" Technology Opportunities Gross Profit | | $1,874,444 | $1,874,444 | $1,874,444 | $1,874,444 | $ 7,497,776 | 16% of Revenue Generating Contracts that we can not bid on without the talent pool we had hired to perform DS4. These areas include opportunities in: Predictive Analytics, Cloud Computing and Messaging; Calculation based on those opportunities no bid and our historical bid to win ratio of 25% of all opportunities bid. |
| | | | | | Subtotal | $ 7,497,776 | |
| **Also Count II: Recompete of DS4** | | | | | | | |
| Lost Fee | | | $ 945,252 | $ 964,158 | $ 983,441 | $ 2,892,851 | DS4: Year 3, 4 and 5 Gross Profits (16%) with PWIN of 60% |
| Lost G&A | | | $ 1,962,489 | $2,001,739 | $ 2,041,774 | $ 6,006,002 | |
| Lost OH | | | $ 908,393 | $ 926,561 | $ 945,092 | $ 2,780,047 | |
| | | | | | Subtotal | $ 11,678,899 | |
| | | | | | **TOTAL** | **$ 37,597,527** | |

Exhibit 3 clarifies that the consequential damages claim is based on lost profits, loss of corporate market value (calculated by multiplying by six the lost profits on the base and option years), along with general and administrative costs (G&A), and overhead. Exhibit 3 indicates that Nexagen seeks its fixed fee for not only the base and option years but also for three additional years for which it contends it would have been the awardee after a recompetition. For the five years, Nexagen seeks a total of $19,088,159 in lost profits, G&A, and overhead. On top of this it seeks $11,011,592

4

for the alleged loss of corporate market value, and nearly $7.5 million in lost profits on other contracts due to its loss of the "talent pool" it hired to perform this contract.

Exhibit 3 illustrates that the damage calculations for the two claims overlap. As stated above, the major component of the expectation damages claim is the $1,835,265 in lost profits for the base and option year. Nexagen also included these in the consequential damages claim. (*Compare* app. resp., ex. 3, *and* R4, tab 20 at 11)

## DECISION

*Jurisdiction*

After reviewing Nexagen's claim, the Board raised the issue of our jurisdiction to consider the consequential damages claim because, while the claim has an abundance of detail for the much smaller expectation damages claim, it makes only relatively vague assertions with respect to consequential damages. We have held, for example, that if a claim is so lacking in specificity that the CO would "have to be omniscient to decipher appellant's intent," we do not possess jurisdiction. *Sermor, Inc.*, ASBCA No. 46755, 95-1 BCA ¶ 27,500 at 137,043. We requested that the parties address the issue in their briefs.

FAR 2.101 provides that a "claim" is: "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." The Court of Appeals for the Federal Circuit has held that the claim must provide the CO adequate notice of the basis and amount of the claim. *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987).

Shortly after our decision in *Sermor*, the Court of Appeals clarified the minimal amount of information required in *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563 (Fed. Cir. 1995). In *H.L. Smith*, the contractor submitted nine letters requesting equitable adjustments that did not explain how it calculated the amounts due, and did not submit any documentation, even after repeated requests from the CO asking for a more detailed explanation so that he could evaluate the claim. (*Id.* at 1564). The Board dismissed the appeals, finding that the "claim letters consist merely of broad allegations of Government caused delay and disruption without linking a specific assertion of delay or disruption to the actual dollar amounts requested." *H.L. Smith, Inc.*, ASBCA No. 45111 *et al.*, 94-2 BCA ¶ 26,723 at 132,933. The Board held that it lacked jurisdiction because the contractor failed to present enough information to the CO for him to meaningfully evaluate the claims. *Id.*

The Federal Circuit reversed, holding that neither the Contract Disputes Act nor the FAR required the contractor to account for each cost component of the claim.

5

*H.L. Smith*, 49 F.3d at 1565. The Court held that, while our decision accurately described the claim letters, providing the CO adequate notice of the basis and amount does not require the contractor to submit a detailed breakdown of costs or financial documentation. *Id.* at 1564-65. Thus, the Court held that allegations of government delay, along with a sum certain, are sufficient for jurisdiction, even if there is no explanation as to how the delay resulted in the damages or how the damages were calculated. In applying this standard, we have thus characterized the amount of information required to provide adequate notice of the basis and amount of the claim as "quite low." *L-3 Communications Integrated Systems, L.P.*, ASBCA Nos. 60713, 60716, 17-1 BCA ¶ 36,865 at 179,626.

In its supplemental brief, Nexagen implicitly acknowledges that it did not provide the CO all of the information contained in Exhibit 3. But it states that after submission of the claim, "the Contracting Officer should have been on notice that the claim of $37,597,526.94 reflected the loss of value, loss of goodwill, loss of profit, overhead and G&A resulting from the termination." (App. supp. br. at 5)

We agree with Nexagen that it submitted enough information, if just barely so, to pass the low jurisdictional bar. Without doubt, administrative review of the claim would have been difficult unless the CO were omniscient or telepathic. Otherwise, there is no way for her to have known, for example, that Nexagen seeks an $11 million reduction in corporate value equal to the base and option year fees multiplied by six. But the claim does cite a "loss of $35M+ in revenue...related to Predictive Analytics, [and] Cloud Computing" and "$48M in gross revenue Good Will Lost," conveying by virtue of numbers larger than the value of the task order that Nexagen must be basing the claim on the loss of other contracts. Further, the reference in the claim to losing a partnership on an $80 million contract, and "emboldened industry concerns" about its ability to effectively perform and partner, and the loss of "Technical Expertise," at least suggest the notion of a company that has been weakened and is less valuable due to the government's alleged actions. Further the claim specifically cites the loss of $10 million in overhead, G&A and lost profit. Thus, we agree with Nexagen that the CO would have been on notice that the $37+ million claimed reflected the loss of value, loss of goodwill, loss of profit, overhead and G&A resulting from the termination, even if she had no idea how Nexagen calculated its alleged losses.

Accordingly, we conclude that we possess jurisdiction to consider the consequential damages claim and now consider whether Nexagen is entitled as a matter of law to recover the types of damages it seeks.

*Summary Judgment Standard of Review*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty*

6

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, the Board must determine whether there is a genuine issue for trial. *Id.* at 249.

*Claims for Lost Profits after a Termination for Convenience*

Because so much of Nexagen's consequential damages claim is based on lost profits after a convenience termination, we begin with the termination for convenience clause. FAR 52.249-6 provides in relevant part that:

> (a) The Government may terminate performance of work under this contract in whole or, from time to time, in part, if -
>
> (1) The Contracting Officer determines that a termination is in the Government's interest....

Such clauses allow the government to terminate a contract and avoid the payment of common law damages such as anticipatory profits for which it could be liable if it terminated a contract lacking such a clause. *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,222. The Court of Claims explained that "[t]his exclusion from relief of unearned profits [in a termination for convenience] is a settled policy which has long been accepted and enforced." *William Green Constr. Co. v. United States*, 477 F.2d 930, 936 (Ct. Cl. 1973).

The CO's election to terminate for the government's convenience is conclusive unless the contractor can show a clear abuse of discretion or that the government acted in bad faith. *T&M Distributors, Inc. v. United States*, 185 F.3d 1279, 1283 (Fed. Cir. 1999). A termination tainted by bad faith or abuse of discretion opens the door to breach damages such as anticipatory profits. *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996). To prove bad faith, there must be clear and convincing (or "well-nigh irrefragable") evidence of some specific intent to harm the contractor. *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002). Due to the heavy burden of proof, contractors have rarely been successful in demonstrating the government's bad faith. *Krygoski*, 94 F.3d at 1541. But, if Nexagen meets this elevated standard, it may be entitled to lost profits on the base year of the contract. (We address the option year at the end of this opinion.)

7

Even if a contractor succeeds in showing bad faith, it is not entitled to consequential damages[3], such as lost profits on *other* contracts. *William Green Constr*, 477 F.2d at 936. Such damages, whether in a termination for convenience or in the event of some other kind of breach, are not recoverable because the award of future contracts is too remote and speculative. The Court of Claims explained that: "if [the damages] are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit." *Ramsey v. United States*, 121 Ct. Cl. 426, 435 (1951) (quoting *Myerle v. United States*, 33 Ct. Cl. 1, 26 (1897) (quoting *Fox v. Harding*, 61 Mass. 516, 522 (1851)). The Court of Claims and the Federal Circuit have followed this rule in numerous cases. *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1333 (Fed. Cir. 2003) (after default termination converted to one for convenience, denying as too remote and uncertain profits and overhead on contracts appellant contended it would have been awarded but for the government's breach); *Olin Jones Sand Co. v. United States*, 225 Ct. Cl. 741, 744 (1980) ("The speculative alleged loss of future contracts and work in this case comes within the losses of outside business, outside contracts, and general company worth referred to in [*William Green Constr.*].... [T]here is no assurance that plaintiff would have received any additional contracts or work."); *William Green Constr.*, 477 F.2d at 936 ("even in a common-law suit there would be no recovery for general loss of business, the claimed loss of the entire Green net worth, and losses on the non-federal work–such damages are all deemed too remote and consequential"); *Ramsey*, 121 Ct. Cl. at 433-35 (denying costs of bankruptcy reorganization and profits lost on corporation's overall business activities).

In this appeal, Nexagen seeks $11,011,592 in lost corporate value, $7,497,776 in lost business opportunities in predictive analytics and other fields, and $11,678,899 for what it refers to as "gross profits" on the successor contract to the one at issue (app. resp., ex. 3). Raj Parikh, Nexagen's Chief Operating Officer, states in a declaration that Nexagen has a historical success rate of 25% when it bids on contracts and that Nexagen would have been bidding on the successor contract as the incumbent (app. resp., ex. 12). Even if we accept these assertions, the claim remains speculative. The contract at issue did not entitle appellant to these contracts and there is no assurance that it would have received any additional contracts, *e.g.*, *Olin Jones*, 225 Ct. Cl. at 744, and, to the extent that it received them, there is no assurance that it would have made a profit.

---

[3] Consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act." BLACK'S LAW DICTIONARY (10th ed. 2014).

Thus, we grant the government summary judgment with respect to Nexagen's claims for $11,011,592 in lost corporate value, $7,497,776 in lost business opportunities in predictive analytics and other fields, and $11,678,899 in lost profits, G&A and overhead on the successor contract.

*The Option Year*

This opinion does not address the portion of Nexagen's claim in which it seeks lost profits, G&A, and overhead totaling more than $3.7 million on the option year of the task order (app. resp., ex. 3). In an option contract, the government has bargained for the right to exercise or not exercise the option at its discretion and a contractor cannot compel the government to exercise the option. *Government Systems Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed. Cir. 1988). The Board has recognized a limited exception to this rule if the contractor can prove bad faith, an abuse of discretion or that the CO acted in an arbitrary or capricious manner. *IMS Engineers-Architects, P.C.*, ASBCA No. 53471, 06-1 BCA ¶ 33,231 at 164,674, *recon. denied*, 07-1 BCA ¶ 33,467, *aff'd, IMS Engineers-Architects, P.C. v. Geren*, 274 F. App'x 898 (Fed. Cir. 2008).

At the time of termination in this appeal, roughly seven months remained before the government had to issue a preliminary notice if it wished to exercise the option (*see* R4, tab 1 at 140, tab 2 at 2). The parties have not addressed in their briefs whether we should treat the exercise of an option so far in the future as similar to a future contract and thus barred as too remote and speculative by *William Green Construction* and the other cases cited above, or whether a finding of bad faith in the base year termination for convenience could somehow extend to the option year as well. We decline to rule on this issue *sua sponte*.

## CONCLUSION

We grant the government's motion for partial summary judgment as set forth in this opinion.

Dated: January 29, 2019

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

9

I concur                                          I concur

RICHARD SHACKLEFORD                               J. REID PROUTY
Administrative Judge                              Administrative Judge
Acting Chairman                                   Vice Chairman
Armed Services Board                              Armed Services Board
of Contract Appeals                               of Contract Appeals


       I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 60641, Appeal of Nexagen
Networks, Inc., rendered in conformance with the Board's Charter.

       Dated:


                                     JEFFREY D. GARDIN
                                     Recorder, Armed Services
                                     Board of Contract Appeals