FRIEDMAN, Circuit Judge.
 

 This is an appeal from an order of the United States Claims Court dismissing the appellant’s complaint seeking the amount allegedly due it under a government contract. The ground of dismissal was that the complaint asserted a claim of more than $50,000 that was not certified, as section 6(c)(1) of the Contract Disputes Act of 1978, 41 U.S.C. § 605(c)(1), required. We reverse.
 

 I
 

 The undisputed facts are as follows:
 

 A. The General Services Administration (GSA) awarded the appellant a one-year contract to provide cleaning services for a federal office building. The appellant began performance of the contract in July 1974, and GSA exercised an option to extend the contract for one year. The contract expired at the end of July 1976.
 

 Under the contract, the appellant was to be reimbursed for its actual costs up to a specified ceiling. The appellant submitted monthly invoices to GSA for the costs it incurred. Each of these invoices included a “certif[ieation] that the amounts invoiced herein do not exceed the lower of (i) the contract price, or (ii) the maximum levels established in accordance with Executive Order 11695, January 11, 1973.”
 

 In a letter dated August 12, 1975, GSA informed the appellant that GSA’s audit of the first year of performance of the contract determined that the appellant’s “accounting system is quite unsatisfactory for use under our contract.” The letter stated that “[ijmmediate action must be taken” and required a response by August 25. In a letter dated April 27, 1976, GSA notified the appellant that, as a result of this audit, “adjustments” of $17,240 would be made. The GSA official concluded:
 

 I concur in the auditor’s proposed adjustments and will appreciate a reply by May 3,1976, advising me when a credit will be reflected on your billing.
 

 In a May 12,1976 response, the appellant excepted to some of the findings, requested more detailed information, and
 

 suggested] that I sit down with whomever prepared this summary along with the auditors report and we may be able to determine a final result.
 

 (All of appellant’s letters were written in the first person singular and signed by its president, Howard Boltz.)
 

 On June 4, 1976, GSA acknowledged the appellant’s letters
 

 concerning your claim for compensation of $8,700 ... and the exceptions you take on some of the findings arising from the last audit of your company records.
 

 Your claim for compensation of $8,700 has neither been denied or allowed, but is still under consideration, together with the other costs questioned by our auditors.
 

 The letter referred to “our meeting on May 11, 1976,” and requested “additional information to substantiate your claims.”
 

 As noted, the contract terminated at the end of July 1976. The appellant wrote to GSA again on October 15, 1976:
 

 In further response to your letter of April 27, 1976, and the final financial adjustments to contract No. 65-05BB-41700 (Neg).
 

 Your letter suggest an audit adjustment of $17,240. After the items that make up that amount are resolved, there are additional funds I am entitled too and I have outlined them here.
 

 ---- [The letter then described these “additional funds,” which totalled $23,-232.98.]
 

 I am troubled that your offices have held up payment of billing # 12 of my second year of this contract. I’m informed that the action is a result of our mutual inability to satisfactorily conclude the first years final billing.
 

 I am anxious to remedy any cause of these delays and fully prepared to act
 
 *589
 
 promptly with you and your staff to finalize and conclude this matter.
 

 In a letter dated February 7, 1977, GSA reported to the appellant the results of its final audit of the appellant’s performance of the contract:
 

 The number and amounts of the cost adjustments are sizable, covering not only the final period adjustments but also those unresolved from the prior year audit. I concur with the results of the audit and wish to arrive at a settlement as soon as possible so final payment can be made. I note that our negotiations to settle the first year audit findings date back to April 27, 1976, and adjustments totalling $42,007 are still outstanding.
 

 The final audit concluded that additional “adjustments” for the second year of $35,-787 were required, bringing the overall total adjustments to $77,794. In its response on February 15, 1977, the appellant requested that “a preliminary meeting be arranged ... to ascertain what exactly should be resolved and how to achieve satisfaction without a lot of lost time.”
 

 The appellant wrote again to GSA on March 15, 1979, concerning “the monies my company still has coming”:
 

 My contention is that I am owed my 12th and 13th bill of the second year totaling $66,605.45, plus additional sums not previously billed that I wrote your office about October 15, 1976; this is an additional $23,232.98 and reflects a credit for some figures that were in error previously. I was not aware until our last meeting with your auditor that I was entitled to bonding costs which amounted to $9,427.00. Now these four items mentioned total $99,609.69.
 

 There have been inconsistencies that have greatly contributed to the resulting delay in settling the financial conclusions of this contract and I suggest we resolve this matter with negotiation as opposed to further bookkeeping and auditor effort.
 

 In a letter dated April 11, 1980, GSA “acknowledge[d the appellant’s] March 10, 1980 letter concerning settlement,” and stated that the appellant “must provide evidence to substantiate the unpaid claims that have not been resolved.”
 

 B. On September 23, 1983, GSA sent a certified letter to the appellant which read in full:
 

 This is in regard to our expired contract GS-05B-41770 [sic] which was for cleaning services at the Federal Building, 1819 Pershing Road, Chicago, Illinois.
 

 In 1977 our auditors advised that under the above contract there was $77,794.00 adjustments outstanding in the above contract. Numerous efforts have been made by GSA to resolve this amount disputed by your firm.
 

 Please be advised that should you have any documentation pertaining to this amount you should present it to the undersigned no later than October 17, 1983. No further delays will be accepted in resolving this and closing out this contract.
 

 The appellant responded on October 17, 1983, with a letter that substantially duplicated its letter of March 15, 1979.
 

 GSA issued a “final decision of the Contracting Officer” on October 25, 1983, which stated that the appellant had “failed to provide any documentation to refute the GSA claim of $77,794.00 costs questioned in the GSA audit report.” The contracting officer ruled, however, that the appellant was entitled to a credit of $9,427.00 for bonding costs, which reduced the amount due GSA to $68,367.00. Since GSA had withheld $66,605.45 by not paying two of the appellant’s invoices, GSA concluded that the appellant owed it $1,762.55.
 

 C. The appellant filed a timely suit in the Claims Court under the Contracts Dispute Act, 41 U.S.C. §§ 601-13 (1978) (Disputes Act), seeking $99,265.43 under the contract. The Claims Court granted the government’s motion to dismiss. It held that the appellant’s letter of March 15, 1979, constituted a “claim” for more than $50,000 which, under the Disputes Act (which had become effective on March 1,
 

 
 *590
 
 1979), was required to be certified, and that because of this noncertification, the court had no jurisdiction over the suit. The court stated that prior to the March 15, 1979 “claim,” the appellant “had submitted a claim to GSA dated October 15,1976, in the amount of $23,232.96 [sic]” which the “March 15, 1979 claim included____” The court rejected the government’s contention that the appellant’s submissions prior to March 1, 1979, were not “claims,”
 

 since each of the mentioned submissions was, in fact, a “written demand or assertion by one of the parties, seeking, as a matter of right, the payment of money, adjustment, or interpretation of contract terms, or other relief arising under or relating to this contract.”
 
 Z.A.N. Co. v. United States,
 
 6 Cl.Ct. [298,] 304 [(1984)].
 

 II
 

 A. Section 6(a) of the Disputes Act provides in relevant part:
 

 All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.
 

 41 U.S.C. § 605(a). For claims of more than $50,000, the contractor must
 

 certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.
 

 41 U.S.C. § 605(e)(1). If such a claim has not been certified, the Claims Court lacks jurisdiction over an appeal from the decision of the contracting officer denying the claim.
 
 See W.M. Schlosser Co. v. United States,
 
 705 F.2d 1336, 1338-39 (Fed.Cir. 1983).
 

 “[W]hen[, however,] a contracting officer renders a decision after the effective date of the Act on an uncertified claim submitted prior to that date, the contractor may proceed under the Act and appeal to this court.”
 
 Folk Constr. Co.,
 
 226 Ct.Cl. 602, 605 (1981). Since none of the appellant’s invoices or letters included this certification, the “seminal issue in this action is,” as the Claims Court stated, “whether plaintiff’s claims were submitted to the contracting officer prior or subsequent to March 1, 1979, the effective date of the CD A.”
 

 The Claims Court found that, in its October 15, 1976 letter, the appellant “had submitted a claim to GSA” for $23,232.98. It held, however, that the submission of this claim before the effective date of the Disputes Act did not bring this case within the
 
 Folk
 
 rule. Stating that the March 15, 1979 “claim” for $99,609.69 “included the $23,-232.96 [sic] claim amount,” the court concluded:
 

 Under the requirements of section 6(c)(1) of the CD A, plaintiff’s claim dated March 15,1979 had to certify that the claim was made in good faith, that the supporting data are accurate and complete to the best of the contractor’s knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable. Because plaintiff’s March 15, 1979 claim included both prior outstanding claim amounts, demonstrating that over $50,000 was at issue, and since the post-CDA claim was submitted after March 1, 1979 without certification, plaintiff has not satisfied the requisite steps to satisfy the statutory jurisdictional requirements set forth in the CDA.
 

 The rationale upon which the Claims Court dismissed the suit is unclear. The court may have concluded that the first time the appellant filed a claim for more than $50,000 was in its March 15, 1979 letter and that under the Disputes Act that “claim” was required to be certified. Alternatively, the court may have concluded that that letter superseded and took the place of all claims the applicant had filed previously, and that because that superseding claim was more than $50,000, it was required to be certified. Whatever may have been the basis of the Claims Court’s
 
 *591
 
 decision, however, that decision cannot stand.
 

 This court dealt with a similar issue in
 
 Tecom, Inc. v. United States,
 
 732 F.2d 935 (Fed.Cir.1984). There the contractor originally filed with the contracting officer in 1980 a claim for slightly more than $11,000 which, because it was for less than $50,000, was not required to be certified. The contracting officer denied the claim. The contractor appealed to the board of contract appeals, and in its complaint to the Board sought more than $72,000. The increase in the claim reflected the government’s extension of the term of the contract. The Board upheld the contracting officer, and the contractor appealed to this court.
 

 The government contended that, because the claim before the Board was for more than $50,000 and was not certified, we had no jurisdiction over the appeal. We rejected that contention, pointing out that
 

 [b]y the statutory terms, the certification requirement applies to submission of claims to the
 
 contracting officer;
 
 certification at that time, if required, is all-important.
 
 See W.M. Schlosser Co., supra,
 
 at 1338. In this instance, the contracting officer had full jurisdiction over the claim which was for far less than $50,-000, his decision on the claim was well within his authority, and the ASBCA had full jurisdiction over Tecom’s appeal from that decision. When the company later came to file its final complaint before the ASBCA, the Air Force had exercised its option to extend the contract for one more year. The increased reimbursement sought in that complaint was explained (at the Board hearing) as representing (a) an improved reevaluation of the original estimate ($11,000.04) on the basis of the first year’s actual experience, and (b) a projection of that increased sum for the expected full three-year term of the contract. There is no contest of that explanation, and on its face it is reasonable and adequate.
 

 In those circumstances, we think the Government wrong in demanding certification at the Board level. Where no certification of the claim was earlier compelled because the amount asked was properly less than $50,000 at that time, the contractor could legally increase its monetary demand before the ASBCA in view of the intervening prolongation of the contract and the experience of actual operation. There is no violation of either the letter or the purpose of the certification requirement of the Contract Disputes Act,
 
 i.e.,
 
 to push contractors into being careful and reasonably precise in the submission of claims to the contracting officer.
 

 732 F.2d at 9.37 (footnote omitted). The court referred to
 

 the general principle that a monetary claim
 
 properly
 
 considered by the contracting officer (here, because it was less than $50,000 and covered only one year) need not be certified or recertified if that very same claim (but in an increased amount reasonably based on further information) comes before a board of contract appeals or a court.
 

 Id.
 
 at 938 (footnote omitted).
 

 Tecom
 
 recognized that “[wjhere no certification of the claim was earlier compelled because the amount asked was properly less than $50,000 at that time, the contractor could legally increase its monetary demand ... in view of the intervening prolongation of the contract and the experience of actual operation.” Here, the initial claim for $23,232.98 was not required to be certified. The increase of the claim to $99,-265.43 did not change the fundamental character of the claim, which was based upon the invoices the appellant had submitted but the government had refused to pay. The amount of the claim increased because the appellant had not originally included the nonpayment of the final invoice and the government’s audit of the second year of the contract had resulted in the disallowance of additional amounts for which the appellant had submitted invoices. The increase in the claim, like the increase in
 
 Tecom,
 
 thus was “reasonably based on further information.”
 

 
 *592
 
 Although the letter of March 15, 1979, was the first occasion on which the appellant stated in writing that it was seeking $99,609.69, that fact did not convert that letter into a superseding “claim” that eliminated or took the place of the earlier claim. The $23,232.98 claim had been presented in detail in the October 15, 1976 letter. The March 15, 1979 letter stated that the appellant was
 

 owed my 12th and 13th bill of the second year totaling $66,605.45, plus additional sums not previously billed that I wrote your office about October 15, 1976; this is an additional $23,232.98 and reflects a credit for some figures that were in error previously. I was not aware until our last meeting with your auditor that I was entitled to bonding costs which amounted to $9,427.00. Now these four items mentioned total $99,609.69.
 

 The March 15, 1979 letter also stated that “[t]o my cost $1,027,137, I must add the additional charge of $23,232.98 itemized in our October 15,1976 letter and the bonding cost of $9427.00 for a two year total cost run of $1,059,796.98 [sic].”
 

 In view of the continuing correspondence concerning the amount due the appellant for almost three years before the effective date of the Act and the detailed specification of the $23,232.98 claim in the October 15, 1976 letter (almost two-and-a-half years before the Disputes Act became effective), the authority of the Claims Court to consider the claim should not be controlled by the fact that the appellant’s letter summarizing its claims was submitted on March 15, 1979, rather than at the end of February.
 

 This is not a case in which the parties were negotiating whether the contractor was entitled to any additional payment for changes in the contract, so that the amount of the claim could not be determined until the contractor made a formal written demand.
 
 See, e.g., Paragon Energy Corp. v. United States,
 
 227 Ct.Cl. 176, 645 F.2d 966, 976 (1981). Here the only issue in dispute was whether the appellant adequately had documented its entitlement to the amount it was seeking; the government knew what that amount was.
 

 B. The government contends, however,' that none of the letters the appellant wrote prior to March 15, 1979, or the invoices it submitted, constituted a “claim” under the Disputes Act because a “legitimate CDA claim” must “contain the requisite demand for payment as a matter of right.” The Claims Court held that the appellant’s letters submitted prior to March 1, 1979, met that standard.
 
 See supra,
 
 p. 6. We agree with that conclusion and therefore need not consider whether that is the correct standard.
 

 The appellant’s letter of May 12, 1976, specified various items that the GSA audit of the first year of performance of the contract had disallowed but to which the appellant claimed entitlement. The October 15, 1976 letter gave a detailed breakdown of the “additional funds I am entitled too,” and also referred to “[m]y previous request for funding of the back-wage demand.” Indeed, GSA itself viewed the May 12, 1976 letter as a “claim,” since in its reply of June 4, 1976, it stated that the “claim is still under consideration and final decision has not been made.”
 

 We know of no requirement in the Disputes Act that a “claim” must be submitted in any particular form or use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.
 
 See, e.g., Tecom,
 
 732 F.2d at 936-37;
 
 Metric Constr. Co. v. United States,
 
 1 Cl.Ct. 383, 392 (1983). The letters the appellant wrote to the government satisfied that standard and constituted a claim under the Disputes Act—as the GSA itself explicitly recognized with respect to at least one of those letters. The fact that in thosé letters the appellant frequently expressed the hope that the dispute could be settled and suggested meeting to accomplish that result does not mean that those letters did not constitute “claims.”
 

 
 *593
 
 Since we conclude that the appellant’s letters constituted “claims” under the Disputes Act, it is unnecessary to consider the government’s contention that the invoices were not “claims” under the Act.
 

 C. Finally, the government contends that the appellant’s “delay in pursuing its remedy bars it from relying upon those letters as the jurisdictional basis for a complaint filed more than seven years after those letters were submitted.” It was not until October 25, 1983, however, that the contracting officer rendered his “final decision.” The appellant filed its suit in the Claims Court on May 11, 1984, within the 12-month limitation period for bringing such action under section 10(a)(3) of the Disputes Act, 41 U.S.C. § 609(a)(3).
 

 The fact that the appellant and the government exchanged a number of communications and held discussions for a substantial period between 1976 and the contracting officer’s decision in 1983 does not make the appellant’s suit untimely or preclude it from relying upon the pre-March 1, 1979 correspondence to show that it filed claims before that date. Indeed, the government recognized the propriety of deferring the filing of suit until the contracting officer rendered his final decision. In the letter of June 4, 1976, informing the appellant that its “claim” was under consideration and had not been finally decided, the GSA official also told the appellant that for that reason the appellant’s letter to the GSA Administrator appealing “an alleged decision made by me” had not been forwarded to the Administrator. The letter then stated: “This action on my part does not compromise or jeopordize [sic] your appeal rights since the Disputes Clause is available to you for a period of 30 days after receipt of my final decision.”
 

 The appellant met the time requirement of the Disputes Act, and its suit was timely filed.
 

 CONCLUSION
 

 The judgment of the Claims Court, dismissing the complaint, is reversed, and the case is remanded to that court for further proceedings on the merits of the complaint. REVERSED and REMANDED.