# United States Court of Appeals for the Federal Circuit

---

**ZAFER CONSTRUCTION COMPANY, AKA ZAFER TAAHHUT INSAAT VE TICARET A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1547

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00673-EGB, Senior Judge Eric G. Bruggink.

---

Decided: July 18, 2022

---

ABRAHAM GDANSKI, Gdanski Law PC, Teaneck, NJ, argued for plaintiff-appellant. Also represented by SAM GDANSKI.

ROBERT R. KIEPURA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, MARTIN F. HOCKEY, JR.

---

Before NEWMAN, REYNA, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge.*

Zafer Construction Company appeals a decision of the United States Court of Federal Claims dismissing Zafer's complaint for failing to state a cause of action under Court of Federal Claims Rule 12(b)(6). The Court of Federal Claims determined that Zafer's request for equitable adjustment is not a claim under the Contract Disputes Act and that Zafer's subsequent claim is time barred. Because Zafer's request for equitable adjustment is a claim, we reverse and remand.

I

In June 2008, the United States and Zafer agreed to a $40 million contract to design and build water systems on the Bagram Air Base in Afghanistan. Zafer completed the project and submitted a request for equitable adjustment on September 10, 2013, which it timely amended on December 17, 2014. In its 167-page request, Zafer alleged that the government increased the cost of the project by causing delays and modifying the contract. Zafer's detailed request sought $6.7 million and provided a breakdown of the reasons for the claimed amounts. Zafer submitted its request "so that the parties c[ould] engage in immediate discussions and negotiations to mutually amicably resolve [its] request." Appx46 (request for equitable adjustment). And Zafer certified its request in accordance with the claim-certification requirement of 41 U.S.C. § 7103(b)(1), going beyond what is required by 48 C.F.R. § 252.243-7002(b) to certify mere requests for equitable adjustment.

The parties negotiated for four-and-a-half years but did not fully resolve Zafer's request. On February 7, 2018, Zafer asked to convert its request for equitable adjustment into a claim. The contracting officer reviewed Zafer's claim and determined that most of it is time barred under 41 U.S.C. § 7103(a)(4)(A) because much of the government's alleged conduct had transpired more than six years before Zafer had converted its request into a claim.

Zafer sued in the Court of Federal Claims. The Court of Federal Claims found that Zafer's claim had "accrued no later than August 1, 2011," meaning Zafer had to have submitted a claim by August 1, 2017 for the claim to be timely. Appx10. Although Zafer had submitted a request for equitable adjustment in December 2014, the court determined that because this document "lacks a request for a final decision" and "asks for negotiations," it is not a claim but a request for negotiations. Appx9–10. And because Zafer converted its request for equitable adjustment into a "proper" claim after the 2017 deadline, the court dismissed Zafer's complaint for failure to state a cause of action upon which relief can be granted under the court's Rule 12(b)(6). Appx10–11.

Zafer appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review decisions to dismiss complaints under Rule 12(b)(6) de novo. *Dehne v. United States*, 970 F.2d 890, 892 (Fed. Cir. 1992).

## A

The Federal Acquisition Regulation defines "claim" as

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.

48 C.F.R. § 52.233-1(c); *see Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) ("[T]he definition of the term 'claim' in the FAR governs" the use of that term in the Contract Disputes Act.). The regulation further distinguishes claims from "routine request[s] for payment," like vouchers or invoices. 48 C.F.R. § 52.233-1(c).

Under the Contract Disputes Act, if a contractor's claim is for more than $100,000, the contractor must certify that

(A) the claim is made in good faith;

(B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;

(C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and

(D) the certifier is authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 7103(b)(1); *see* 48 C.F.R. § 52.233-1(d)(2)(iii). Requests for equitable adjustment, on the other hand, require certification of only (A) and (B). 48 C.F.R. § 252.243-7002(b).

In addition to these requirements, a contractor must show that "what the contractor desires by its submissions is a final decision" from the contracting officer determining whether the contractor is entitled to the claimed amount. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327–28 (Fed. Cir. 2010). We have derived this "request" requirement from 41 U.S.C. § 7103(a)(1) and 48 C.F.R. § 33.206(a), which instruct contractors to submit claims "to the contracting officer *for a decision.*" *See James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1543 & n.4 (Fed. Cir. 1996) (emphasis added); *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed. Cir. 1992).

To fulfill the request requirement, the contractor's request for a final decision can be either explicit or implicit. *Transamerica*, 973 F.2d at 1576. The claim does not need to "be submitted in any particular form or use any particular wording." *Cont. Cleaning Maint., Inc. v. United States*,

811 F.2d 586, 592 (Fed. Cir. 1987). For example, a request for equitable adjustment can constitute a claim. *Hejran Hejrat Co. v. U.S. Army Corps of Eng'rs*, 930 F.3d 1354, 1357 (Fed. Cir. 2019). And "[t]here is no necessary inconsistency between" a claim and "an expressed desire to continue to mutually work toward a claim's resolution." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1583 (Fed. Cir. 1995).

## B

The parties appear to agree that Zafer's December 2014 request for equitable adjustment satisfies the definition of a "claim" in 48 C.F.R. § 52.233-1(c) and the claim-certification requirement. See Appellee's Br. 8–10 (identifying but not disputing these requirements). At issue is whether Zafer satisfied the request requirement.

Zafer argues that its December 2014 request for equitable adjustment fulfills the request requirement because the document at length discusses Zafer's request for money owed, showing that Zafer intended for the contracting officer to make a decision regarding entitlement. Zafer contends that the Court of Federal Claims' contrary conclusion relies on a "hyper-technical analysis" that Zafer asserts we have previously rejected. Appellant's Br. 8.

The government responds that Zafer "sent clear signals" that it intended only to negotiate a contract proposal, not to request a final decision. Appellee's Br. 10. In the government's view, Zafer knew the difference between a request for equitable adjustment and a claim because Zafer submitted a proper, but untimely, claim in December 2018.

## C

The parties suggest that the request requirement focuses on a contractor's subjective intent. *See* Appellant's Br. 11 (arguing that the length of the request for equitable adjustment evinces Zafer's "intent for the contracting officer [to] make a decision for entitlement"); Appellee's Br.

10 ("Zafer sent clear signals that, before 2018, it sought only to negotiate a contract proposal and not to seek a COFD."). That is incorrect. The determination focuses on whether, objectively, the document's content and the context surrounding the document's submission put the contracting officer on notice that the document is a claim requesting a final decision. *See Heyl & Patterson, Inc. v. O'Keefe*, 986 F.2d 480, 483 ("[A] request for a final decision can be implied from the context of the submission."), *overruled in part on other grounds by Reflectone*, 60 F.3d at 1579 n.10.; *see also Transamerica*, 973 F.2d at 1576 ("[A]s long as what the contractor desires *by its submissions* is a final decision, that prong of the CDA claim test is met." (emphasis added)); *Maropakis*, 609 F.3d at 1328 ("A claim cannot be based merely on intent to assert a claim without any communication by the contractor of a desire for a contracting officer decision.").

The request requirement is not a hyper-technical requirement, and we have repeatedly rebuffed attempts to make it one, relying instead on a "common sense analysis." *Transamerica*, 973 F.2d at 1579.

In *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586 (Fed. Cir. 1987), the appellant submitted letters "specif[ying] various items that . . . had [been] disallowed but to which the appellant claimed entitlement" and "express[ing] the hope that the dispute could be settled." *Id.* at 592. The government argued that the letters were not claims because they did not "contain the requisite demand for payment as a matter of right." *Id.* We rejected this argument, stating that "[w]e know of no requirement in the Disputes Act that a 'claim' must be submitted in any particular form or use any particular wording." *Id.* "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* We clarified that "[t]he fact that in those letters the appellant frequently expressed the

hope that the dispute could be settled and suggested meeting to accomplish that result does not mean that those letters did not constitute 'claims.'" *Id.*

In *Transamerica Insurance Corp., Inc. v. United States*, 973 F.2d 1572 (Fed. Cir. 1992), the appellant had submitted a letter with a certification to the contracting officer, requesting equitable adjustment. *Id.* at 1574–75. The government argued that this letter was not a claim because it did not include a request for a final decision, either explicitly or implicitly. *Id.* at 1576. We recognized that the letter "did not use the explicit words 'we request a final decision from the contracting officer,'" but we concluded that "it [wa]s clear from the language of the letter itself that" the appellant wanted a final decision. *Id.* at 1578.

In particular, the letter "requested payment of a sum certain[] and gave the contracting officer adequate notice of the basis and the amount of the claim." *Id.* We were "loathe to believe that . . . a reasonable contractor would submit to the contracting officer a letter containing a payment request after a dispute had arisen solely for the contracting officer's information and without at the very least an implied request that the contracting officer make a decision as to entitlement." *Id.* So we reaffirmed our holdings in *Contract Cleaning* and reiterated that "[t]here is no necessary inconsistency between the existence of a valid CDA claim and an expressed desire to continue to mutually work toward a claim's resolution." *Id.* at 1579.

And in *Hejran Hejrat Co. v. United States Army Corps of Engineers*, 930 F.3d 1354 (Fed. Cir. 2019), the appellant had submitted a request for equitable adjustment that specifically requested that the submission be "treated as a [request for equitable adjustment]." *Id.* at 1356. The government argued that a request for equitable adjustment cannot constitute a claim and, alternatively, that the appellant's document could not be a claim because it did not include language requesting a final decision. *Id.* at

1357. We held that a request for equitable adjustment can be a claim. *Id.* And we reiterated that "magic words are not required under our cases": "a CDA claim need not be submitted in any particular form or use any particular wording" as long as it includes "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* (quoting *Maropakis*, 609 F.3d at 1327). We found persuasive that the appellant "submitted a sworn statement attesting to the truth of the submission, included detailed factual bases for its alleged losses, and claimed a sum certain based on the losses." *Id.* at 1357–58.

While Zafer's request for equitable adjustment does not explicitly request a final decision, its content and the context surrounding its submission put the contracting officer on notice that the document is a claim requesting a final decision. In the 167 pages of its request, Zafer meticulously alleges changes and delays caused by the government, explains the reasoning behind its allegations, and requests a sum certain. *E.g.*, Appx184–85, 202. And Zafer's certification satisfies all of the certification requirements for a claim, which go beyond what is required for a mere request for equitable adjustment. Appx204; *see* 48 C.F.R. § 243.204-71(c) ("The certification required by 10 U.S.C. 2410(a), as implemented in the clause at 252.243-7002, is different from the certification required by 41 U.S.C. 7103."); *compare* 41 U.S.C. § 7103(b)(1) (claim certification requirement), *with* 48 C.F.R. § 252.243-7002(b) (request for equitable adjustment certification requirement). Like the appellant in *Hejran*, Zafer clearly stated the basis of its claim, claimed a sum certain, and submitted a sworn statement attesting to the truth of its submission.

In its request for equitable adjustment, Zafer even explicitly characterizes the request as "encompass[ing] all *claims* incurred by ZAFER as a result of changes, constructive changes, [and] delay" caused by the government. Appx53 (emphasis added). And it notes in the conclusion of

its request that "contracting officers are required to deal with *claims* fairly." Appx204 (emphasis added). Zafer's request for equitable adjustment constitutes "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim," so it is a claim. *Cont. Cleaning*, 811 F.2d at 592.

This appeal is distinct from *James M. Ellett Construction Co. v. United States*, 93 F.3d 1537 (Fed. Cir. 1996). There, the government had terminated for convenience the remainder of a contract and, in return, the appellant had submitted a settlement proposal requesting payment. *Id.* at 1540. We determined that the appellant's settlement proposal was a proposal, not a claim. *Id.* at 1543–44. We reasoned that "[t]he parties [had] agreed that they would try to reach a mutually agreeable settlement" and, "[i]f they were unable to do so . . . the contracting officer would issue a final decision." *Id.* at 1544. In other words, the appellant was contractually required to propose and attempt to negotiate a settlement before submitting a claim. "Indeed, it [wa]s a proposal that [the appellant] contractually agreed to submit in the event of a convenience termination." *Id.* We therefore concluded that the proposal "at the time of submission was not a claim because it was not submitted to the contracting officer for a decision" but rather for contractually required negotiations. *Id.* Unlike the appellant in *Ellett*, Zafer was not contractually required to propose and attempt to negotiate a settlement with the government before submitting a claim, so the reasoning of *Ellett* does not apply here.

As we have repeatedly held, "[t]here is no necessary inconsistency between" a claim and "an expressed desire to continue to mutually work toward a claim's resolution." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1583 (Fed. Cir. 1995) (alteration in original) (quoting *Transamerica*, 973 F.2d 1572). In fact, one of the stated purposes of the Contract Disputes Act is to "induce resolution of more contract disputes by negotiation prior to litigation." S. Rep. No. 95-

1118, at 1 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5235, 5235; *see also* H.R. Rep. No. 95-1556, at 5 (1978) ("The purpose of the proposed legislation as amended is to provide for . . . administrative and judicial procedures for the settlement of claims and disputes relating to Government contracts."). We have warned against requirements that "would allow [the government] to continually . . . seek information and prolong negotiations without issuing an appealable decision" because such requirements can "delay[] rather than accelerat[e] any possible settlement." *Reflectone*, 60 F.3d at 1582. Requirements "that allow[] the government to unilaterally designate when a submission becomes a 'claim' disrupt[] the balance of power between the government and contractors that the CDA sought to establish." *Id.* A stringent request requirement would do exactly that.

We recognize that contracting officers will sometimes face the difficult challenge of determining whether a request for equitable adjustment is also a claim. Contractors must choose between submitting a claim—which starts the interest clock but requires the contracting officer to issue a final decision within 60 days—and submitting a mere request for equitable adjustment—which does not start the interest clock but gives the contractor more time to negotiate a settlement and possibly avoid hefty legal fees. *See* Government Contract Compliance Handbook §§ 16:7, 16:11 (5th ed. Cumulative Supplement 2021–2022). The overlap between these two types of documents might create room for gamesmanship. For example, a contractor could submit a document that is a claim—starting the interest clock—but appears to be a mere request for equitable adjustment—causing the contracting officer to not issue a final decision within the 60-day deadline and allowing interest to accrue for months or years. But the government has tools to address this challenge: The contracting officer can communicate to the contractor that she is going to treat the document as a claim and issue a final decision within

60 days. Or the government can explicitly require the contractor to propose settlement terms and attempt to settle disputes before submitting a claim to the contracting officer for a final decision, as in *Ellett*.

## III

Because Zafer's December 2014 request for equitable adjustment implicitly requests a final decision and therefore is a claim, we reverse the Court of Federal Claims' contrary determination and remand for further proceedings.

### **REVERSED AND REMANDED**

COSTS

Costs to Zafer.