ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Petition of - | ) |
| | ) |
| AeroKool Aviation Corp. | ) ASBCA No. 63637-PET |
| | ) |
| Under Contract No. N00383-18-C-D035 | ) |

APPEARANCES FOR THE APPELLANT:      Paul J. Seidman, Esq.
David J. Seidman, Esq.
  Seidman & Associates, PC
  Washington DC

APPEARANCES FOR THE GOVERNMENT:   Samuel W. Morris, Esq.
  DCMA Chief Trial Attorney
Quinn A. Disparte, Esq.
Amelia R. Lister-Sobotkin, Esq.
  Trial Attorneys
  Defense Contract Management Agency
  Chantilly, VA

OPINION BY ADMINISTRATIVE JUDGE ARNETT ON THE GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

AeroKool Aviation Corp. (appellant or AeroKool) filed a petition for issuance of a contracting officer's final decision to address its termination settlement proposal (TSP) and breach of contract proposal[1] submitted following the termination for convenience of its contract. The government moves[2] to dismiss this matter for lack of jurisdiction arguing that it is premature because the parties have not reached an impasse and the proposals have not ripened into claims under the Contract Disputes Act (CDA). AeroKool contends that both its breach proposal and TSP are CDA claims and that the Board retains jurisdiction of this matter (app. resp. at 6-10). We agree with appellant, deny the government's motion to dismiss, and grant appellant's petition.

---

[1] AeroKool characterizes its submission as six CDA claims including two breach of contract proposals and four termination proposals. For clarity, this decision refers to the breach of contract proposals/claims collectively as the "breach proposal" and the termination proposals/claims collectively as the TSP.

[2] In response to the Board's July 10, 2023 Order, the government filed a response on August 21, 2023 that effectively moved the Board to dismiss appellant's petition for lack of jurisdiction. The government's response is hereinafter referred to as a motion to dismiss.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

1. On September 19, 2018, the Navy awarded Contract No. N00383-18-C-D-035 (the Contract) to AeroKool for evaluation, repair, and/or modification of turbine aircraft engines (gov't ex. 1). Administered by the Defense Contract Management Agency (DCMA), the Contract included an induction period[3] of one year from the date of award and repair turn-around time of 21 calendar days from the date of induction (*id.* at 25; *see also* gov't ex. 4 at 12).

2. On October 10, 2019, the government unilaterally issued Modification No. P00001 which appeared to extend the induction period to December 31, 2021 and final delivery deadline to February 28, 2022 (gov't ex. 2). AeroKool asserts that Modification No. P00001 was issued after the contract expired and constitutes a second contract (app. resp. at 3).[4]

3. On May 27, 2020, the government unilaterally executed Modification No. P00003 which fully terminated the Contract for the government's convenience (gov't ex. 3 at 2). The modification cited the clause entitled "Termination for Convenience of the Government (Fixed-Price) (Apr 1984)" and stated that settlement of costs would be governed by Part 49 of the Federal Acquisition Regulation (FAR) (*id.*).

4. The Contract included FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 2012) and FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (JAN 2017) (gov't ex. 1 at 45, 52).

5. On May 25, 2021, AeroKool submitted its "Requests for Breach of Contract Damages and Termination Settlement Proposals" which included two proposals for breach of contract (hereinafter "breach proposal") and four TSPs (gov't ex. 4). AeroKool asserted separate legal arguments and costs associated with each proposal (*id.*). The document concluded stating, "Each of these Government actions [breach of contract and termination for convenience] (and the associated recovery amounts) are distinct and in the alternative" (*id.* at 58). The submittal also contained a CDA certification signed by AeroKool's president (app. pet. ex. 5 at 60).

---

[3] While the Contract does not define "induction" or "induction period," the contract uses the term to mean receipt by the contractor or the period during which the contractor receives engines for repair (gov't ex. 1 at 5). AeroKool's TSP characterizes the induction period as an "ordering period" (gov't ex. 4 at 18).

[4] This decision refers to Contract No. N00383-18-C-D-035 as the Contract and does not address the validity of Modification No. P00001 or the merits of AeroKool's assertion that the modification created a second contract.

6.  On June 30, 2021, Navy Procuring Contracting Officer (PCO) Torres notified AeroKool that its "claim for breach of contract" had been forwarded to government counsel (app. pet. ex. 2).

7.  On September 30, 2021, DCMA Termination Contracting Officer (TCO) Sanders identified herself as the single point of contact, indicated she did not "have support for a breach at this time," and stated that the TSP would be processed first (gov't ex. 5 at 1).  AeroKool requested that the government provide by November 1, 2021 milestones to resolve both proposals concurrently (gov't ex. 6 at 1-2).  The TCO responded urging AeroKool to segregate its termination costs (*id.* at 1).

8.  On November 17, 2021, AeroKool asserted that the parties were at an impasse in negotiations, requested final decisions addressing the TSP and breach proposal, and provided a CDA claim certification (gov't ex. 7 at 2; app. pet. at 5).  In an email entitled "2nd Request for an Adequate Termination Settlement Proposal N00383-18-C-D035," the TCO promptly denied that the parties were "in negotiations" and urged AeroKool to separate the TSP from the breach proposal to avoid delays associated with litigation (gov't ex. 7 at 1).

9.  On December 16, 2021, AeroKool expressed concern that the government was not addressing the TSP and breach proposal as CDA claims (app. pet. ex. 9 at 1-3).

10.  On January 12, 2022, Navy PCO Torres asserted the government's position that no breach had occurred and stated that the government did not intend to issue a "breach-specific COFD" and would handle the breach proposal as part of the "ongoing settlement negotiation process" (app. pet. ex. 11 at 2-3).

11.  On January 25, 2022, AeroKool reminded the government that it had converted its TSP and breach proposal into CDA claims in November 2021 and inquired when a final decision would be issued (app. pet. ex. 14 at 1).

12.  On March 31, 2022, AeroKool referenced its "CDA claims" and requested, by April 14, 2022, a binding schedule for negotiated resolution of all issues and a firm date for issuance of a contracting officer's decision prior to March 31, 2023, if a resolution could not be reached (app. pet. ex. 17 at 2).

13.  On April 12, 2022, the TCO asserted that the government was "moving quickly so resolution is feasible by 3/31/23" (app. pet. ex. 18 at 1).

14.  On March 27, 2023, the TCO indicated that the original milestone was "no longer feasible" and identified April 18, 2023 as her suspense to provide a termination settlement offer (gov't ex. 11 at 1).  We find that the government did not issue final decisions or reach resolution of either the breach claim or the TSP by the March 31, 2023

or April 18, 2023 suspense dates. By August 21, 2023, the government's suspense date to issue its termination settlement offer shifted to September 15, 2023 (gov't mot. at 4, 10).

15. On June 9, 2023, AeroKool filed a petition with the Board seeking an order that the contracting officer issue a final decision on its TSP and breach proposal claims. The petition was docketed as ASBCA No. 63637-PET.

## DECISION

*Parties' Contentions*

The government moves to dismiss this petition for lack of jurisdiction arguing that AeroKool's TSP and breach proposal were not claims within the meaning of the CDA and did not ripen into claims prior to AeroKool's petition to the Board because the parties had not reached an impasse in negotiations (gov't mot. at 1).

AeroKool asserts the breach proposal was converted to a CDA claim when it was certified on November 17, 2021 (app. resp. at 6). AeroKool contends that the TSP was converted to a CDA claim by virtue of impasse (*id.* at 7-9). AeroKool argues that the TCO's repeated characterization of the TSP as inadequate was a refusal to evaluate the TSP which constituted an impasse (*id.*). AeroKool also infers that the government's failure to address the TSP in the two years since its submission is tantamount to an impasse (app. reply at 5).

The Board's authority to issue an order pursuant to Board Rule 1(a)(5) "presupposes jurisdiction under the CDA." *Ironhorse Ltd.*, ASBCA No. 56455-920, 09- 1 BCA ¶ 34,096 at 168,590 (citing *Charitable Bingo Assocs., Inc., d/b/a Mr. Bingo*, ASBCA No. 52999-883, 01-1 BCA ¶ 31,194 at 154,024). The Board's jurisdiction pursuant to the CDA over a contractor's claim is predicated upon the contractor's submission of its claim in writing to the contracting officer for a decision. 41 U.S.C. § 7103(a); *Commissioning Solutions Global, LLC*, ASBCA No. 59007-945, 14-1 BCA ¶ 35,523 at 174,107. Additionally, contractor claims exceeding $100,000 must be certified in accordance with 41 U.S.C. § 7103(b) to be considered proper claims. *Mawaraa AlBihar Co.*, ASBCA No. 58585, 13-1 BCA ¶ 35,426 at 173,783. As the proponent of the Board's jurisdiction, AeroKool bears the burden of establishing jurisdiction by a preponderance of the evidence. *Najmaa Alshimal*, ASBCA No. 62701, 21-1 BCA ¶ 37,872 at 183,899; *see also K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015).

*Was the breach proposal a CDA claim in November 2021?*

First, we consider whether AeroKool's breach proposal was a claim under the CDA when it was certified on November 17, 2021. The government contends that AeroKool did not submit a separate CDA claim for breach of contract because its breach proposal and TSP were included in one document and AeroKool declined to separate them (gov't mot. at 10). The government cites AeroKool's request that the proposals be "resolved at the same time" as acquiescence that both be handled as part of the termination process (*id.*). We disagree. AeroKool simply requested that the government work the breach proposal and TSP concurrently. In determining whether AeroKool's breach proposal was a CDA claim, we consider the requirements for a claim and whether AeroKool's breach proposal was independent from its TSP.

Under the FAR, a claim is a non-routine written demand or assertion seeking, as a matter of right, the payment of money in a sum certain. 48 C.F.R. § 52.233-1(c). If a claim exceeds $100,000, the CDA requires that it be certified consistent with 48 C.F.R. 52.233-1(d)(2). A contractor must show that it desires a contracting officer's final decision determining whether the contractor is entitled to the claimed amount. *Zafer Constr. Co. v. United States*, 40 F.4th 1365, 1367 (Fed. Cir. 2022); *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010). Here, AeroKool provided the CDA certification for its breach proposal as early as May 25, 2021 (SOF ¶ 5) and again on November 17, 2021, expressly requested a contracting officer's decision (SOF ¶ 8). AeroKool followed up several times referencing its CDA claim and seeking a firm date by which the government would issue a final decision (SOF ¶¶ 9, 11-12). Additionally, some government correspondence referred to the breach proposal as a "claim" (SOF ¶ 6). We conclude that AeroKool's breach proposal satisfies the requirements of a CDA claim.

Next, we consider whether AeroKool's breach claim was an independent claim from AeroKool's TSP and the termination process. "A claim need not be submitted in any particular form or use any particular wording, but it must provide a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 776 (Fed. Cir. 2021) (internal quotations omitted) (quoting *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015)). We look to binding precedent involving both claims and TSPs.

In *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1540 (Fed. Cir. 1996), the Court of Appeals for the Federal Circuit considered a contractor's CDA claim filed post-termination to recover compensation for changes, unforeseen costs arising from the government's failure to disclose information, and lost profits. At the urging of the government, the contractor subsequently submitted its TSP which was "largely duplicative of" its CDA claim, but the parties reached an impasse during negotiation of

5

the TSP. *Id.* On appeal, the Federal Circuit rejected the government's assertion that the contractor's claim had been subsumed within the TSP. *Id.* at 1546-47. The Court distinguished between the contractor's claim and its TSP noting that the CDA provides for interest on contractor claims whereas interest is not recoverable on a TSP. *Id.* Thus, the Court recognized that the claim was independent of the TSP and held that the trial court had jurisdiction over both the CDA claim and the TSP. *Id.* at 1548.

Following *Ellett*, the Board in *Agility Defense & Government Servs., Inc.*, ASBCA No. 58870, 15-1 BCA ¶ 35,810 at 175,133, held, "[i]ndependent claims are not necessarily merged into the termination of the same contract under which the claim arose and may be appealed separately from the termination for convenience appeal." Similarly, the Board in *Military Aircraft Parts*, ASBCA No. 60290, 16-1 BCA ¶ 36,257 at 176,884, determined a contractor's breach of contract claim to be an independent claim that was not merged into a subsequent termination for convenience. The Board recognized that the measure of damages available to a contractor for a breach of contract claim may be significantly different from that available under a termination for convenience. *Id.*

Here, the breach proposal is an independent claim from the TSP. While AeroKool submitted its breach claim in the same document as its TSP, the proposals advance different theories of recovery (SOF ¶ 5). In support its breach claim, AeroKool asserts a superior knowledge argument and seeks anticipatory profits (gov't ex. 4 at 5, 8-9, 21-27, 30-39, 52-58). The measure of damages potentially available under the claim differ from those available under the TSP. AeroKool asserted separate legal arguments and costs associated with its breach proposal (SOF ¶ 5). Additionally, the parties discussed them as separate proposals (SOF ¶¶ 6-12). In her initial correspondence, the TCO stated that she did not have "support" for the breach and repeatedly urged AeroKool to segregate its termination proposal from the breach proposal (SOF ¶ 7). At the conclusion of its claim, AeroKool states that its breach proposal is distinct from its TSP and clarifies that the different proposals advance alternative arguments (SOF ¶ 5).

We hold that the breach proposal was an independent claim which warranted a response through a contracting officer's final decision.

*Was there an impasse that converted the TSP into a CDA claim?*

Typically, a TSP converts to a CDA claim only after negotiations reach an impasse, at a point when the contractor demands a final decision. *Ellett*, 93 F.3d at 1544. Impasse is an inherently factual determination. *See Central Env't, Inc.,* ASBCA No. 51086, 98-2 BCA ¶ 29,912 at 148,080; *Rex Systems, Inc. v. Cohen*, 224 F.3d 1367, 1372-73 (Fed. Cir. 2000). An impasse can exist without either party taking a firm position in opposition to the other. It can occur by the passage of time without resolution when one party evidences a desire to begin the disputes process. *Central Env't, Inc.*,

6

98- 2 BCA ¶ 29,912 at 148,080; *see Ellett*, 93 F.3d at 1544 (impasse where contractor requested final decision after ten months of "fruitless negotiation").

In *Central Env't, Inc.*, the Board considered the government's dilatory processing of the TSP to constitute impasse. 98-2 BCA ¶ 29,912 at 148,080. The contractor had requested negotiation meetings on multiple occasions. *Id.* Noting that fourteen months had elapsed since submission of the TSP and five months had elapsed since the contracting officer had planned to issue a decision, the Board concluded that the parties had been at an impasse since the contractor's request for a final decision. *Id.*

Like the facts of *Central Env't, Inc.*, twenty-nine months have elapsed since AeroKool submitted its TSP in May 2021 (SOF ¶ 5). More than six months have elapsed since the government's March 31, 2023 suspense for resolution of the TSP, and the government had not issued its termination settlement offer as of September 1, 2023 (SOF ¶¶ 12-14). AeroKool indicated its desire to begin the disputes process November 17, 2021 when it certified the TSP and requested a final decision (SOF ¶ 8). We conclude that the government's dilatory processing of AeroKool's TSP rises to the level of impasse. Accordingly, the Board has jurisdiction to hear the petition.

<u>CONCLUSION</u>

We deny the government's motion to dismiss and direct the government to issue a contracting officer's final decision addressing both AeroKool claims by December 1, 2023 if not resolved prior to that date.

Dated: October 16, 2023

LAURA J. ARNETT
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63637-PET, Petition of AeroKool Aviation Corp., rendered in conformance with the Board's Charter.

Dated: October 18, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8