ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Red Bobtail Transportation | ) ASBCA Nos. 63783, 63784 |
| | ) |
| Under Contract No. HTC711-14-D-R028 | ) |

APPEARANCE FOR THE APPELLANT:    Michael D. Maloney, Esq.
    Williams Mullen PC
    Tysons, VA

APPEARANCES FOR THE GOVERNMENT:    Caryl A. Potter, III, Esq.
    Air Force Deputy Chief Trial Attorney
    Geoffrey R. Townsend, Esq.
    Patricia W. Walter, Esq.
    Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK DENYING THE
GOVERNMENT'S MOTION TO DISMISS

Red Bobtail Transport (RBT) seeks recovery through two appeals of amounts owed under a contract for trucking services in Afghanistan. The government seeks dismissal of the appeals on the grounds that RBT has not complied with the claim provisions of the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. We deny the motions.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On January 9, 2014, the United States Transportation Command awarded the contract identified above to RBT for trucking services in Afghanistan (R4, tab 1).[1] The Performance Work Statements (PWS) submitted into the record by the government required RBT to ensure all trucking missions (unless specified otherwise by the government) had "security support"[2] (R4, tabs 2 at 36, 3 at 36). Among the security providers the government could require was the Afghanistan government (referred to as "GIRoA"), through the Afghan Public Protection Force (APPF) (*id.*; *see also* R4, tab 2 at 50). Missions were compensated based upon the number of 25-kilometer mission units between the points of origin and destination (R4, tabs 2 at 28, 3 at 27). The contract contained mission unit rates that included GIRoA security, with different rates

---

[1] The government Rule 4 files are the same for both appeals.

[2] The record contains two versions of the PWS. One is dated November 11, 2014, and the other December 2, 2015 (R4 tabs 2, 3).

for security sourced from other entities or when there was no security (R4, tab 1 at 4-6; app. supp. R4, tab 01e).[3]

2.  On December 14, 2015, the contracting officer provided a memo to Afghan trucking contractors about the proper invoicing of mission units for APPF services. Among other things, it emphasized that contractors could only use the GIRoA Security rate for mission units that APPF escorted.  It also reminded contractors of their duty to properly invoice the government.  (R4, tab 4)

3.  On February 28, 2016, RBT's president sent an email to the contracting officer asking him to "[p]lease see the attached invoices and Memos for RBT claims." That was followed by two numbered paragraphs saying:

> 1.      Claim for proper Invoicing of MUs for APPF
> Services and RBT Claim for Arrears for DH01-DH11 and
> F01-F11 invoices.
>
> 2.      Claim for DH12-DH13 and F12-F13 invoices
> (effective November 1, 2015, APPF changed its Mission
> Unit from 50 KM to 25 KM; however, the unit price has
> not been reduced to correspond to the shortened distance.
> In other words, APPF is now charging US$ 220 per each
> 25 Km mission unit instead of 50 Km)

(App. supp. R4, tab 1 at 1)

4.  The attached claim memos referred to by the email are similar but not identical.  Each is from RBT's president to the contracting officer.  In addition to responding to the December 14 memo from the contracting officer both say they are making a "claim for reimbursement."  (App. supp. R4, tabs 01c, 01d)[4]

5.  One of the memos sought AFN 3,468,740 (app. supp. R4, tab 01c at 8). Acknowledging the contracting officer's concerns about APPF invoicing, the claim recognized that the number of mission units for which RBT received reimbursement from the government exceeded the number for which it paid APPF during invoice periods DH01-DH011 and F01-F011 (app. supp. R4, tab 01c at 8-9; *see also* app. supp. R4, tabs 01h, 01i, labeling the identified items as invoice periods).  After offering reasons for that discrepancy related to mission performance, it claimed the government had failed to compensate RBT the full amount RBT had paid to APPF for

---

[3] Appellant's supplemental Rule 4 files are also the same for both appeals.
[4] There is no dispute that these appellant's Rule 4 tabs constitute the attached RBT memos.

the invoiced missions. It explained that in December 2014, APPF had increased its fee rate from $175 to $220 per mission unit. Also, the exchange rate had changed due to inflation, which RBT contended was relevant because it paid APPF in dollars while receiving payment from the government in Afghan Afghanis. The memo closed with the following:

> **C. RBT Claim for Compensation:** Taking into account that RBT has lost AFN 3,213,592.00 due to increase in the APPF rate . . . and due to the high inflation rate in Afghanistan, RBT would like to request the USG to consider the payment of arrears of AFN 3,225,728 for underpaid mission units and AFN 255,148 (estimated as 7.5% of total cost) for its management cost related to operation and maintaining its APPF unit. Thus, the total payable is AFN 3,468,740.00.

(App. supp. R4, tab 01c at 8-10)

6. The second memo sought AFN 4,968,114. It recognized discrepancies in RBT's reimbursements for the number of APPF mission units associated with another set of invoice periods, DH12-DH13 and F12-F13. (App. supp. R4, tab 01d at 11; *see also* app. supp. R4, tabs 01f, 01g). It proffered an explanation but then maintained that the government had underpaid RBT for these invoiced missions because of APPF's December 2014 rate increase and because inflation had generated changes in the exchange rate. Like the first claim, it sought the following:

> **C. RBT Claim for Compensation:** Taking into account that RBT has lost AFN 4,968,144.00 due to increase in the APFF rate . . . and due to the high inflation rate in Afghanistan, RBT would like to request the USG to consider the payment of arrears of AFN 4,968,144[] for underpaid mission units[.] Thus, the total payable to RBT is AFN 4,968,144[.]

(App. supp. R4, tab 01d at 13). Unlike the first claim, RBT did not seek management or operations costs. The second claim contained the following additional language:

> **D. Last but not least,** effective November 1, 2015, APPF changed its Mission Unit from 50 KM to 25 KM; however, the unit price has not been reduced to correspond to the shortened distance. In other words, APPF is now charging US$ 220 per . . . 25 Km mission unit instead of 50 Km. Thus, it increases the APPF rate per unit by 100%. Taking

3

into account that unilaterally doubling APPF rate . . . is outside the scope of the project budget, we will have no option but to request your intervention in addressing this issue, either by amending [the APPF] rate per unit or contacting APPF, on behalf of carriers, to rectify its rate per mission unit. Toward this end, RBT is working to put together a claim for reimbursement and will shortly provide you with supporting documents.

(App. supp. R4, tab 01d at 13)

7. The contracting officer did not issue final decisions for either claim. RBT has appealed the deemed denials, which were docketed as ASBCA No. 63783, seeking $87,083.51, and ASBCA No. 63784, seeking $60,801.75. The complaints assert that the contract provided for payment to RBT for individual missions at a fixed rate based on distance, which included an amount for security. They allege RBT fully performed the 49 missions that are the subject of ASBCA No. 63783 and the 154 associated with ASBCA No. 63784. They contend the government breached the contract by failing to fully pay what was owed for RBT's mission performance. (ASBCA Nos. 63783, 63784 compls. ¶¶ 14-35) The government has moved to dismiss for lack of jurisdiction.

<u>DECISION</u>

According to the government, the appeals should be dismissed because RBT's submittals are not claims necessary to trigger our jurisdiction under the CDA. Instead, it says they are merely requests for equitable adjustments submitted during negotiations with the government. The government also contends that, even if the submittals otherwise are claims, they have fragmented what is really one claim that exceeds $100,000 and therefore should have been certified under 41 U.S.C. § 7103(b). Given the nature of the claims and the government's arguments we issue this single decision applicable to both appeals.

For jurisdictional purposes, a claim need only have been submitted according to the procedures delineated in the CDA. *ECC Int'l Constructors, LLC v. Sec'y of the Army*, 79 F.4th 1364, 1377 (Fed. Cir. 2023). It must be by a contractor against the Federal Government relating to a contract and be submitted to the contracting officer for a decision. 41 U.S.C. § 7103(a)(1)-(a)(2). It also must make a demand in writing, and if for money, provide notice of its general amount. 41 U.S.C. §§ 7103(a)(2), (b), (f)(1)-(2); *ECC Int'l Constructors,* 79 F.4th at 1374-75, 1377. The request must show explicitly or implicitly that it desires a final decision from the contracting officer. *Zafer Constr. Co. v. United States*, 40 F.4th 1365, 1367-70 (Fed. Cir. 2022). However,

4

that is not a hyper-technical requirement, but based on a "common sense analysis." *Id.* at 1368.

RBT's submissions easily meet the test for a claim. The cover email is a writing addressed to the contracting officer stating that it is forwarding two claims (SOF ¶ 3). Both attached memos, also addressed to the contracting officer, identify themselves as claims for reimbursement of amounts that RBT paid to APPF. Although they do not explicitly identify the contract at issue, they refer to RBT's performance and costs, the government's underpayments, and request increased compensation. The memos obviously relate to RBT's contract. Both contain succinct statements of the exact amount of money RBT lost, declare the amounts payable, and request payment. (SOF ¶¶ 4-6) A common sense analysis leads to the conclusion that they implicitly seek final decisions. The government stresses that the second memo (associated with ASBCA No. 63783) followed the request for payment with the additional observation about APPF's conversion of its own definition of mission units (distinct from the contract) from 50 kilometers to 25 and therefore RBT would be preparing an additional claim pertaining to those facts.[5] The government suggests this demonstrates the memo is not itself a claim. That is incorrect. The memo contains an express claim premised upon APPF's rate change and the deterioration in the exchange rate. That it also put the government on notice that RBT was working on a further claim (which evidently did not materialize) based upon APPF's alteration of its mission units does not nullify the claim that it did advance. (SOF ¶ 6)

Nothing in the memos supports the government's additional contention that they are mere requests for equitable adjustments made as one component of larger ongoing negotiations between the parties. That is simply the argument of counsel which is not evidence. Even if true, they can still constitute claims. *Zafer Constr. Co.,* 40 F.4th at 1367-70 (noting a request for equitable adjustment can also be a claim and there is no inconsistency between pursuing a claim and expressing continued desire to work toward a resolution given the CDA's purpose of inducing dispute resolution by negotiation).

In sum, the content and context of the memos notify the contracting officer that they are claims seeking final decisions. *Id.* at 1368 (holding the determination focuses objectively on whether the document puts the contracting officer on notice that it is a claim requesting a final decision).

Lastly, we turn to the government's argument that we lack jurisdiction because RBT did not comply with 41 U.S.C. § 7103(b). That statute requires contractors to provide a specified certification for claims greater than $100,000. When applicable, it

---

[5] Notably, that language is not in the other memo.

is a condition of our jurisdiction.  *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed. Cir. 1991); *MTS Gen. Trading & Constr.*, ASBCA No. 63521, 24-1 BCA ¶ 38,501 at 187,136.  The government does not suggest that either claim exceeds $100,000.  However, it contends RBT split what is really one claim into two so that it could avoid certifying.

It is true that the potential for subversion of the certification requirement compels us to remain aware of artificial attempts to split what is really a single claim into multiple ones that are each beneath the certification threshold.  *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990).  However, a single contract may give rise to more than one claim.  *Id.*  So, the flip side of an attempted fragmentation by the contractor is where it tries to pursue matters in an appeal that first should have been submitted in a separate claim to the contracting officer.  To distinguish between those scenarios for jurisdictional purposes our consideration must include determining if the issues are based on a common or related set of operative facts.  *See Kiewit Infrastructure West Co. v. United States*, 972 F.3d 1322, 1328 (Fed. Cir. 2020); *Placeway Constr. Corp.*, 920 F.2d at 907.  A key to the inquiry is whether the same or related evidence will determine the outcome.  *Placeway Constr. Corp.*, 920 F.2d at 907.  In making these determinations, we consider more than just the face of the claims but the totality of the circumstances.  *See K-Con Bldg. Sys. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015); *Fid. & Deposit Co. of Md.*, ASBCA No. 63278, 23-1 BCA ¶ 38,341 at 186,179.

Contrary to the government's suggestion, these two claims and appeals are not identical.  Though both claims share underlying allegations about changes in APPF's charges and the exchange rate, they pertain to payments made for different sets of mission invoices.  (SOF ¶¶ 5-6)  Accordingly, each complaint alleges that the associated set of missions were completely performed, entitling RBT to payments earned but not fully received in breach of contract (SOF ¶ 7).  An inquiry into the facts applicable to one set of missions, such as whether they were ordered, performed, how much was owed for them, and whether RBT was underpaid, does not necessarily fully inform the facts applicable to the other set.  Different evidence will be necessary to address those missions.  If RBT had only submitted one of these claims for one set of missions, appealed, and then also tried to claim breach for the second set of missions, it likely would have faced the objection that those missions, dependent as they are on their own facts, were never the subject of a claim.  Given the applicable standards, and

totality of the circumstances, we hold RBT did not run afoul of the rule against claim fragmentation by advancing these claims separately.

CONCLUSION

The motion to dismiss is denied.

Dated: June 3, 2024

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63783, 63784, Appeals of Red Bobtail Transportation, rendered in conformance with the Board's Charter.

Dated: June 3, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals