ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| A4 Construction Company, Inc. | ) | ASBCA Nos. 63252, 63456, 63626 |
| | ) | |
| Under Contract No. W9128F-19-C-0016 | ) | |

APPEARANCE FOR THE APPELLANT:    Denver C. Snuffer, Jr., Esq.
 Nelson, Snuffer Dalhe & Poulsen PC
 Sandy, UT

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
 Engineer Chief Trial Attorney
 Jacob W. Harberg, Esq.
 Thomas J. Tracy, Esq.
 Engineer Trial Attorneys
 U.S. Army Engineer District, Omaha

OPINION BY ADMINISTRATIVE JUDGE TAYLOR
ON THE GOVERNMENT'S MOTION TO DISMISS

The United States Army Corps of Engineers (USACE or the government) moves to dismiss ASBCA No. 63456 for failure to state a claim alleging A4 Construction Company, Inc. (A4 or appellant) failed to submit a sum certain amount for its claim.[1]  In the alternative, the government moves to strike paragraphs 8(A), 8(H) and 8(M) from appellant's complaint for failing to provide a sum certain amount for those separate and distinct claims (gov't mot. at 18).  We partially grant the government's motion and strike complaint paragraphs 8(A), 8(H) and 8(M) for failure to state a claim since those separate and distinct claims are based upon materially different, unrelated operative facts, for which A4 did not state a separate sum certain.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

**Contract Award and Termination**

1.  On April 19, 2019, USACE awarded Contract No. W9128F-19-C-0016 (the contract) to A4 for the design and construction of a special operations mountaineering facility at Fort Carson, Colorado (R4, tab 4).  The contract

---

[1] USACE does not seek to dismiss ASBCA Nos. 63252 or 63626.  ASBCA No. 63252 is A4's appeal of the termination for default while ASBCA No. 63626 involves an A4 equitable adjustment claim on a different related contract.

incorporated by reference the FAR disputes clause which defined a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." FAR 52.233-1, DISPUTES (MAY 2014) (R4, tab 4 at 38).[2]

2. USACE terminated the contract for default on January 14, 2022, due to appellant's alleged failure to complete the project by its modified contract completion date (R4, tab 3). Appellant appealed the contract termination to the Board. The Board docketed that appeal as ASBCA No. 63252.

**A4's Certified Claim and Complaint**

3. On June 22, 2022, appellant submitted an equitable adjustment claim on the contract to the USACE contracting officer (the claim) (R4, tab 56 at 757-66). The claim included numerous exhibits (*id*. at 767-1168). The claim contained several requests for money and delay arising from different events as described below (*id*. at 757-66).

<u>COVID Related Price Increases and Material Delays</u>

4. Throughout its claim and complaint, A4 requests increased price and time adjustments and increased subcontractor prices resulting from COVID-19 related impacts (*id*. at 757-59, 760-61, 763; compl. ¶¶ 8(A), 8(C), 8(D), 8(E), 8(F), 8(J)). A4's claim first asserts a general claim for price and time adjustments resulting from the COVID impacts (R4, tab 56 at 757-58). In its complaint, A4 states, "[A]mong other things, the project was delayed and impacted by: COVID-19-related impacts for which insufficient time was permitted, in violation of the OMB instructions" (compl. ¶ 8(A)). Neither the claim nor complaint, however, specify the monetary impact or number of delay days A4 attributes to these general COVID impacts.

5. The claim then discusses several specific subcontractor COVID related impacts. A4's claim first requests an additional payment of $39,820 due to COVID price increases its subcontractor Arapahoe Fire Protection allegedly incurred over its bid price for fire protection equipment (*id*. at 760; compl. ¶ 8(C)). A4 included this payment request as a line item in its itemized claim certification (R4, tab 56 at 766).

6. A4 next requests an additional payment of $67,796.88 due to its subcontractor's, Foster Electronic Corporation's (Foster's), allegedly increased costs over its bid price for the procurement and installation of an electronic security system and $504,771 for Foster's allegedly increased costs for the procurement and

---

[2] The government's Rule 4 file is Bates numbered with a six-digit number proceeded by "R.4 USACE." Here, we delete the prefix and the leading zeroes.

installation of audio-visual equipment (*id*. at 761; compl. ¶¶ 8(D), 8(E)). A4 asserts Foster incurred these increased costs due to the government's delay in issuing Options 0006 and 0007 and the resulting COVID price increases (R4, tab 56 at 761).

7. USACE notified A4 by letter dated March 4, 2020, of its intent to exercise the options in CLINs 0004, 0006 and 0007 and requested A4 hold its proposal pricing through March 31, 2021 (*id*. at 1071). A4 agreed to hold its proposal pricing (*id*.). USACE exercised these options by bilateral Contract Mod No. P00002 on March 30, 2021 (R4, tab 58 at 2531-33). In both its claim and complaint, A4 alleges it was unable to get its subcontractors to perform the option CLINs 0006 and 0007 work at the proposed prices due to the intervening COVID disruptions (R4, tab 56 at 761; compl. ¶ 8(F)).[3] A4 included line items for "Option 0006" and "Option 0007" in its itemized claim certification (R4, tab 56 at 766).

8. Finally, A4 contends COVID caused delays in getting roofing materials before an unexpected snowstorm (*id*. at 763; compl. ¶ 8(J)). In its claim, A4 alleges the snowstorm caused abnormally muddy grounds resulting in 14-days of delay (R4, tab 56 at 763). It is unclear whether A4 included these 14 days in its 377 days of delay line item in its itemized claim certification (*id*. at 766).

RME Subcontract "Extra Work" and Differing Site Conditions

9. A4's claim next alleges the government required its subcontractor "RME" to perform "extra work" under the contract between July 2020 and December 2020 (*id*. at 759-60). A4 does not spell out the acronym RME but it appears to be a reference to RME Ltd., LLC which was doing business as Rocky Mountain Excavating and Elite Surface Infrastructure (*id*. at 913, 1047). The claim's referenced supporting exhibits show A4 approved certain change orders for various supplies and services (*id*. at 776-94). In her final decision, the contracting officer determined A4's change orders totaled $332,721 with the exclusion of one change order that indicated the price was to "be determined" (R4, tab 58 at 1175).

10. A4's claim further indicates it consolidated the RME "extra work" claim from three prior requests for equitable adjustments (REAs) (R4, tab 56 at 759). First, on December 9, 2020, A4 submitted an REA for "Unforeseen Earthwork & Import", "Soil Stabilization requirements" and "Additional Days with General Conditions" (*id*. at 796-98). This REA appears to be a claim for a differing site condition that required stabilizing "soft soils" at the site (*id*.). The REA requested compensation in the amount of $348,344 including "22 additional days with general conditions for the

---

[3] A4 indicated its subcontractors on Option 0004 agreed to hold their proposed prices (R4, tab 56 at 761).

extra time required to complete this work" (*id*. at 798). By letter dated April 28, 2021, the USACE contracting officer denied the REA (*id*. at 1010-12).

11. On December 17, 2020, A4 submitted a second "extra work" REA for "the unforeseen additional drilled pier footages, concrete, spoils haul-off and additional days with general conditions" (*id*. at 836-41). This REA appears to involve a differing site condition claim regarding the required drilled pier footage depths (*id*.). The REA requested compensation in the amount of $142,980 including "6 additional days with general conditions for the extra time required to complete this work" (*id*.) On January 7, 2021, the USACE contracting officer denied this REA (*id*. at 1003-04).

12. On January 22, 2021, A4 submitted a revised REA in response to the contracting officer's January 7, 2021, denial of its December 17, 2020, REA (*id*. at 930-31). The revised REA adjusted the claimed amount to $136,831 and included "3 additional days (in lieu of 6 additional days) with general conditions for the extra time required to complete the work" (*id.*). On April 13, 2021, the USACE contracting officer denied the revised REA claim (R4, tab 27 at 357-59).

13. Apparently, A4 refused to pay RME for its extra costs following the contracting officer's denial of its REAs (R4, tab 56 at 760). A4 and RME entered arbitration over the disputed amount (*id*.). The arbitrator awarded RME $534,181.10 including $61,036.50 in attorney fees (*id*. at 1047-51). It is unclear whether A4 included the arbitration award in its claim.

14. In addition to the RME "extra work" discussion, A4's June 22, 2022, claim includes sections entitled "Depth of Piers" and "Differing Site Conditions" (*id*. at 762-63). A4's "Depth of Piers" claim appears to be the same as its December 17, 2020 "extra work" REA (*compare id*. at 762-63, *with id*. at 836-41). Similarly, A4's "Differing Site Conditions" claim appears to be the same as its December 9, 2020, "extra work" REA (*compare id*. at 759-60, *with id*. at 763).

15. A4's itemized claim certification does not list a separate sum certain amount for either its RME "extra work", pier depth or differing soil condition claims (*id*. at 766). The claim certification, however, includes a line item for "Subcontractor amounts earned but unpaid at the time of termination" in the amount of $2,859,828.64 but does not break out those costs to its different claims (*id*.).

16. A4's itemized claim certification also includes separate line items for "North American Testing" in the amount of $11,365 and "Schmidt" in the amount of $30,354.91 (*id*.). These two subcontractor claims appear to be part of A4's differing site condition claim but were not included in either its "extra work" claim or its December 9, 2020, REA (*compare id*. at 763, *with* 759-60, 796-98).

4

17. A4 included claims for the extra work resulting from alleged constructive changes and differing site conditions in its complaint but did not include a monetary amount associated with these claims (compl. ¶¶ 8(B), 8(I), 8(K)).

Jobsite Flooding

18. A4's June 22, 2022, claim also asserts a "hundred-year" storm at Fort Carson resulted in water from areas under USACE's control to flood the jobsite (R4, tab 56 at 761-62). A4 claims this flood washed away previously prepared ground preparation and installed forms requiring additional work to fix the resulting damage (*id*. at 762). A4 claims its total cost resulting from this flooding was $193,121.63 (*id*.). This amount appears to include $19,662 for its subcontractor BZ Phase, $18,193.75 for its subcontractor Voidform Water Damage and 77 delay days at $2,016.44 per day ($155,265.88) (*id*.).

19. A4's itemized claim certification, however, does not specifically identify any costs resulting from the flooding except for a single line item identified as "Flooding Void Form: $18,193.75" (*id*. at 766). Similarly, A4 included its jobsite flooding claim in its complaint but failed to include a monetary amount associated with the claim (compl. ¶ 8(G)).

Earthquake

20. A4's June 22, 2022, claim includes a delay claim associated with an earthquake in Utah that damaged the main office of the architectural firm working on the design of the mountaineering facility resulting in the architect being out of communication for two days (R4, tab 56 at 762). A4 claims the earthquake caused a two-delay on the project (*id*.). In her final decision, the contracting officer indicated the government extended the contract by two calendar days due to the earthquake impacts (R4, tab 58 at 1179). A4's itemized claim certification does not specifically identify any costs or damages resulting from the earthquake (R4, tab 56 at 766).

21. In its complaint, A4 claims USACE failed to allow a monetary adjustment on the contract due to the earthquake (compl. ¶ 8(H)). A4, however, does not specify the monetary adjustment amount (*id*.).

Gas Piping Change

22. A4's June 22, 2022, claim next asserts a claim for a gas piping change (R4, tab 56 at 764). A4 claims this change resulted in $8,176 in increased costs and

5

three delay days but alleges USACE reimbursed it only $1,612 (*id*.).[4]  In its claim certification, A4 specifically identifies a claim for "Gas Piping" in the amount of $6,980 (*id*. at 766).  In its complaint, A4 indicates USACE approved a change order for the gas piping but failed to award any extra delay days (compl. ¶ 8(L)).

BZ Phase Concrete Subcontractor

23.  A4 also claims it incurred substantial increased costs and incurred a delay in finding a replacement concrete subcontractor for BZ Phase who, apparently, abandoned the job (R4, tab 56 at 764).  A4 indicates the government's allowance of 64-days for this delay was unacceptable but does not quantify either its increased costs or the number of delay days associated with the concrete subcontractor issue (*id*.).

24.  Similarly, A4's complaint indicates the government refused to award an equitable adjustment in time and money for the BZ Phase subcontractor work impacts but does not identify a monetary amount or the number of delay days A4 seeks resulting from this impact (compl. ¶ 8(M)).  The complaint states, "[I]mpacts to the work performed by the subcontractor BZ Phase, for which an equitable adjustment in time and money was refused" (*id*.).

Delays

25.  Finally, A4's June 22, 2022, claim asserts the contract changes, differing site conditions and COVID impacts resulted in 377 compensable days of delay at a daily rate of $2,016.44 resulting in a claimed adjustment to its G&A costs of $760,197.88 (R4, tab 56 at 764).[5]  A4 does not, however, separately identify the number of delay days associated with each of these events (*id*.).

26.  A4 included an REA certification with its claim requesting a payment in the amount of $5,557,937.74 (*id*. at 766).  The certification broke down the requested sub amounts as follows:

| | |
|---|---|
| Fire Protection extra: | $    39,820.00 |
| Option 006: | $    67,796.88 |
| Option 007: | $  504,771.00 |
| Flooding Void Form: | $    18,193.75 |
| North American Testing: | $    11,365.00 |
| Schmidt | $    30,354.91 |

---

[4] A4 also confusingly indicates USACE paid the difference in Amendment 7 but still includes the $6,980 difference in its claim (R4, tab 56 at 764).

[5] In its itemized claim certification, A4 mistakenly lists this calculation as $748,099.24 rather than the correct calculated amount of $760,197.88 (R4, tab 56 at 766).

| | | |
|---|---|---|
| Gas Piping | $ | 6,980.00 |
| Costs of Labor to A4 | $ | 325,933.34 |
| Costs of Materials to A4 | $ | 181,798.42 |
| | | |
| Days of delay | | |
| | | |
| (377 days at a daily rate of $2,016.44) | $ | 748,099.24[6] |
| Overhead at 8% | $ | 382,780.89 |
| Profit at 7.65% | $ | 395,316.97 |
| Bond at 0.75% | $ | 41,721.44 |
| Subcontractor amounts earned but | | |
| Unpaid at the time of termination | | $2,859,828.64 |
| | | |
| TOTAL of the foregoing: | | $5,557,937.74[7] |

(*Id.*) A4 did not break out its own labor or material costs or the "Subcontractor amounts earned but unpaid at the time of termination" among its separate subclaims.

27. A4 included a footnote to the claimed unpaid subcontractor amounts that stated:

> Some (perhaps all) of the amounts earned before termination and owing to subcontractors may be paid by the Corps to the Bonding Company and eventually paid to subcontractors, which will need to be clarified through a final accounting on the job. At present A4 does not possess the accounting information to allow them to make an appropriate adjustment. None of the amounts owing to subcontractors should be paid twice, but everything ought to be paid in full by the Corps once.

(*Id.*) A4 indicated its certified claim total amount should be adjusted, as needed, based upon this footnote (*id.*).

**Contracting Officer's Final Decision and Appeal**

28. On October 28, 2022, the USACE contracting officer issued a contracting officer's final decision (COFD) providing a detailed explanation as to why she denied each claim (R4, tab 58).

---

[6] The Board notes 377 x $2,016.44 = $760,197.88 and not $748,099.24.
[7] The Board notes appellant's actual claim itemization totals to $5,614,760.48 and not $5,557,937.74. The inclusion of the correct "Days of delay" calculation results in a total claim amount of $5,626,859.12.

29. On November 7, 2022, A4 appealed the COFD to the Board. In its appeal notice, A4 indicated the amount in dispute is $5,557,937.74. A4 also included a Contract Disputes Act (CDA) certification with its appeal notice requesting an entitlement to an equitable adjustment "in an amount not less than $5,557,937.74." The Board assigned the appeal ASBCA No. 63456 and consolidated it with ASBCA No. 63252.

30. Appellant filed its complaint under ASBCA No. 63456 on December 14, 2022. On October 11, 2023, the government filed a motion to dismiss the appeal for failure to state a claim or, in the alternative, to strike paragraphs 8(A), 8(H) and (8)(M) from appellant's complaint since they are subclaims that failed to state a sum certain (gov't mot. at 18).

DECISION

I. Parties' Contentions

In its motion to dismiss, the government first asserts the Board should dismiss appellant's appeal since A4's overall claim fails to meet the FAR sum certain requirement (*id.* at 1). The government alleges the sum certain amount A4 included in its claim is an "approximation" and "fails to add up" (*id.* at 9-12.). In the alternative, the government contends the Board should strike A4's earthquake, BZ Phase subcontractor and general COVID-19 claims since they are stand-alone "sub-claims" for which appellant failed to provide separate sum certain amounts (*id.* at 12-17).

Appellant responds that its claim met the sum certain requirement (app. opp'n at 2). Appellant contends its claim "clearly informed the contracting officer of the nature and the amount of the relief sought by A4" (*id*. at 3). Appellant further asserts the government "could determine the amount with a simple mathematical calculation" (*id*.). Appellant also contends "[a]ll of the purported 'sub-claims' arise from the same material facts, present the same legal theories and seek the same remedies" (*id*. at 7). If the Board determines the claims lack a sum certain amount, appellant asserts the Board should allow A4 to amend its claim rather than dismiss (*id*. at 5). Finally, appellant contends the government forfeited its right to challenge the sum certain sufficiency (*id.* at 5-6).

In its reply to appellant's response, the government reiterates appellant's claim did not state a sum certain and A4 did not provide sum certain amounts for its various distinct sub-claims that arose from different operative facts (gov't reply at 3-5).[8]

---

[8] The government's reply suggests appellant failed to include a sum certain for any of its distinct claims (gov't reply at 4). The government's motion, however, moves to strike only paragraphs 8(A), 8(H) and 8(M) from appellant's

8

Finally, the government asserts it has not forfeited its challenge to the sufficiency of appellant's claim since it filed this motion seven months before the close of written discovery (*id*. at 5-6).

## II. Standard of Review for Motions to Dismiss for Failure to State a Claim

The Federal Circuit has held the requirement for a party to state a sum certain for the specific amount sought for each distinct claim when submitting a claim under the CDA, 41 U.S.C. §§7101-7109, is mandatory but not jurisdictional. *ECC Int'l Constructors (ECCI), LLC v. Sec'y of Army*, 79 F.4th 1364, 1380 (Fed. Cir. 2023). The court further noted the sum certain requirement is an element of a claim that a claimant must satisfy to recover on its claim (*id*. at 1376). The court stated, "[A] claim that does not state a sum certain has not sufficiently pleaded the elements of a claim under the CDA and may be denied by the contracting officer and dismissed on appeal to the boards or Court of Federal Claims for failure to state a claim" (*id*. at 1380). Here, the government moves to dismiss the appeal due to appellant's alleged failure to state a sum certain – a required element of its claim.

"Dismissal for failure to state a claim upon which relief can be granted is appropriate where the facts asserted in the complaint do not entitle the claimant to a legal remedy." *Parsons Government Services, Inc*., ASBCA No. 60663, 17-1 BCA ¶ 36,743 at 179,100 (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In deciding a motion to dismiss for failure to state a claim, "the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Kellogg Brown & Root Services, Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013). "For purposes of assessing whether an appeal before us states a claim upon which relief can be granted, the primary document setting forth the claim is not the complaint, per se, but the contractor's claim submitted to the contracting officer." *Parsons Government Services, Inc*., 17-1 BCA at 179101 citing *Lockheed Martin Integrated Systems, Inc*., ASBCA Nos. 59508, 59509, 17-1 BCA ¶ 36,597 at 178,281. Accordingly, we look to both A4's complaint and its certified claim in analyzing whether they state a claim upon which relief can be granted. *Halbert Construction Company, Inc*., ASBCA Nos. 62250, 62251, 21-1 BCA ¶ 37,863 at 183,858.

## III. Appellant's Overall Claim States a Sum Certain

The FAR disputes clause defines a claim, in part, as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." *See* FAR 52.233-1(c), DISPUTES (MAY 2014).

---

complaint (gov't mot. at 18). As such, we do not render an opinion on whether appellant's other claims contain sum certain amounts.

9

While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc., v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997).

The government first contends appellant's claim does not contain an overall sum certain because it is an "approximation" and "fails to add up" (gov't mot. at 9-12). A4's claim asserts a total amount of $5,557,937.74 (SOF ¶ 26). The claim, however, includes a footnote whereby A4 indicates the claimed amount should be adjusted as needed to avoid a double payment if USACE pays some of the claimed subcontractor costs to the bonding company that, subsequently, directly pays the subcontractors (SOF ¶ 27). The footnote further states A4 does not have the necessary accounting information to make the appropriate adjustment in the claim (*id.*). The government contends that footnote undermines the sum certain requirement (gov't mot. at 10-11).

The government asserts the footnote's qualifying language is "indistinguishable" from other language the Board has previously determined does not meet the CDA sum certain requirement (*id*. at 11). The Board has held a claim's qualifications to a numerical amount may prevent it from being a sum certain. *See, e.g., Odyssey International, Inc*., ASBCA No. 62062, 20-1 BCA ¶ 37,510 at 182,212 ("at least"); *Elham Ahmadi Construction Co.*, ASBCA No. 61031, 17-1 BCA ¶ 36,861 at 179,604 ("about"); *Strobe Data, Inc*., ASBCA No. 60123, 16-1 BCA ¶ 36,124 at 176,695 ("a minimum of"); *J.P. Donovan Construction, Inc*., ASBCA No. 55335, 10-2 BCA ¶ 34,509 at 170,171 *aff'd J.P. Donovan Const. v. Mabus*, 469 F.App'x 903, 908 (Fed. Cir. 2012) ("approximately"); *Sandoval Plumbing Repair, Inc.*, ASBCA No. 54640, 05-2 BCA ¶ 33,072 at 163,933 ("no less than"); *Eaton Contract Services, Inc*., ASBCA No. 52888 *et al*., 02-2 BCA ¶ 32,023 at 158,267) ("in excess of"); and *id*. at 158,269 ("well over").

On the other hand, the Board has held an indication that a claim may need adjusting in the future does not invalidate the sum certain requirement. *M.J. Hughes Construction, Inc*., ASBCA No. 61782, 19-1 BCA ¶ 37,235 at 181,235; *Ball Aerospace & Technologies Corp*., ASBCA No. 57558, 11-2 BCA ¶ 34,804 at 171,276; *Computer Sciences Corp*., ASBCA No. 27275, 83-1 BCA ¶ 16,452 at 81,843. In the *M.J. Hughes Construction* appeal, M.J. Hughes Construction, Inc. provided a specific dollar amount but noted two parts of its claim may overlap requiring possible recalculation of the damages to prevent double recovery. The government moved to dismiss the appeal for failing to state a sum certain. The Board found the claim stated a specific dollar amount even though it indicated that amount "may need to be adjusted based on the CO's entitlement decision so as to avoid double recovery." *M.J. Hughes* 19-1 BCA at 181,235. This case is similar.

A4 submitted a claim for a specific dollar amount. The claim included a footnote notifying the contracting officer the amount may need a future adjustment to avoid a double payment if USACE pays some of the claimed subcontractor costs to the bonding company and subsequently, the bonding company directly pays the subcontractors. The footnote does not undermine the claim's specific dollar amount. Rather, the footnote merely informs the contracting officer of a potential future necessary adjustment to prevent a possible overpayment. It is well established that a contractor may amend its claim by increasing or decreasing the amount on appeal to the Board. *See Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed. Cir. 1984); *Constellation NewEnergy, Inc.*, ASBCA No. 62518, 21-1 BCA ¶ 37,758 at 183,285 ("The sum certain in a claim is not set in stone"). A4's notification to the contracting officer of a possible future adjustment to prevent a potential double recovery does not defeat the sum certain requirement.

The government also asserts appellant's claim fails to state a sum certain due to the mathematical inaccuracies in the calculations (gov't mot. at 11-12). The government points out appellant's certified claim states it is for 377 delay days at $2,016.44 per day for a total of $748,099.24 (SOF ¶ 26). The government correctly notes this calculation should be $760,197.88 (gov't mot. at 12). The government contends the inaccurate delay calculation results in the contracting officer having to "guess at the actual total cost of delay" (*id.*).

Furthermore, the government notes appellant's claimed "TOTAL" is inaccurate (*id.*). Appellant's claim indicates its itemized claims total $5,557,937.74 (SOF ¶ 26). The correct total for the itemization should be $5,614,760.48. The government contends, "[A] facially inaccurate calculation by definition cannot be 'certain'" (gov't mot. at 11). The government argues the total miscalculation is "nothing more than an approximation" (*id.*).

The Board has long held a claim that is readily calculable by simple arithmetic meets the sum certain requirement. *PHI Applied Physical Sciences, Inc.*, ASBCA Nos. 56581, 58038, 13-1 BCA ¶ 35,308 at 173,337 ("Although the amount sought was not expressly totaled by appellant, a sum certain total is readily calculable by simple arithmetic"); *Northrop Grumman Systems, Corp., Space Systems Div.*, ASBCA No. 54774, 10-2 BCA ¶ 34,517 at 170,233 (A monetary remedy is stated in a "sum certain" when the amount sought is identifiable as a "determinable amount"); *Mohammad Darwish Ghabban Est.*, ASBCA No. 51994, 00-2 BCA ¶ 31,114 at 153,671 ("Where the amount demanded can be determined by simple mathematical calculation, a contractor's submission constitutes a valid claim over which the Board has jurisdiction").

In its motion, the government itself correctly calculates the claim amount (gov't mot. at 3). Appellant's claim clearly gave the government notice of the amount of its

11

total claim. *Creative Mgmt. Servs., LLC v. United States*, 989 F.3d 955, 962 (Fed. Cir. 2021) ("The requirement that a claim demand a 'sum certain' serves to provide the parties with notice of the amount of the claim"). As such, appellant's mathematical miscalculations do not defeat the sum certain requirement.

IV. Appellant Fails to State a Sum Certain for Complaint Paragraphs 8(A), 8(H), and 8(M)

In the alternative to dismissing appellant's entire claim for failing to meet the FAR sum certain requirement, the government moves to strike paragraphs 8(A), 8(H) and 8(M) from appellant's complaint (gov't mot. at 18). The government contends appellant's claims for the earthquake, the BZ Phase concrete subcontractor and the general COVID-19 impacts should be dismissed for failing to state a sum certain for each of those separate and distinct claims (*id*. at 13-17). Appellant responds that all its "purported 'sub-claims' arise from the same material facts, present the same legal theories and seek the same remedies" (app. opp'n at 7).

One contract may give rise to numerous claims. *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). The Federal Circuit has held that requests are "separate claims if they *either* request different remedies (whether monetary or non-monetary) *or* assert grounds that are materially different from each other factually or legally." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (emphasis in original) (citing *Contract Cleaning*, 811 F.2d at 592). Likewise, in *Lee's Ford Dock, Inc.*, the Federal Circuit observed that "[m]aterially different claims 'will necessitate a focus on a different or unrelated set of operative facts.'" *Lee's Ford Dock, Inc. v. Secretary of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017) (quoting *Placeway Constr. Corp.*, 920 F.2d at 907) (to determine whether an issue constitutes a new or separate claim "the court must assess whether or not the claims are based on a common or related set of operative facts"). Consequently, a contractor's monetary claim must state a bottom-line sum certain for each distinct claim component and not just the entire case. *K-Con Bldg. Sys., Inc.*, 778 F.3d at 1005, citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985) ("Congress did not intend the word 'claim' to mean the whole case between the contractor and the Government; but, rather, that 'claim' mean each claim under the CDA for money that is one part of a divisible case").

In this case, A4's June 22, 2022, claim describes numerous separate and distinct subclaims that arise from materially different and unrelated operative facts (SOF ¶¶ 4-25). The claim includes COVID impacts, differing site condition claims due to soil conditions and pier depths, equitable adjustment claims for damages resulting from a flood and an earthquake, and delay claims due to variations in the existing gas piping conditions and the loss of a concrete subcontractor. The government has moved to strike the earthquake, the BZ Phase concrete subcontractor and the general COVID-19 impact claims for failing

to state a sum certain (gov't mot. at 18). The government correctly notes A4 failed to include a separate sum certain amount for those separate and distinct claims.

### A. Earthquake Impact

A4's claim asserts a delay claim resulting from an earthquake in Utah (SOF ¶ 20). Appellant's complaint further indicates the earthquake impact entitled A4 to an adjustment in time and money (SOF ¶ 21). The government moves to strike A4's complaint paragraph 8(H) that contains this claim since it is a separate and distinct claim for which A4 failed to state a sum certain amount (gov't mot. at 13-15).

Appellant's earthquake claim indicates the architect working on the design of the mountaineering facility was out of communication for 2 days due to the earthquake (SOF ¶ 20). Appellant's claim does not, however, indicate the total number of days of delay or the monetary amount it believes it is entitled to resulting from the earthquake. Moreover, appellant's complaint indicates USACE failed to allow an unspecified monetary adjustment on the contract due to the earthquake (SOF ¶ 21). As such, we are unable to determine the sum certain amount A4 claims for the alleged earthquake impact and must dismiss that claim and strike complaint paragraph 8(H).

### B. BZ Phase Concrete Subcontractor Claim

The government next moves to strike A4's complaint paragraph 8(M) that contains A4's claim for an equitable adjustment due to the loss of a concrete subcontractor, BZ Phase (gov't mot. at 15-16). A4's claim indicates the government's allowance of 64-days for the delay resulting from the loss of this subcontractor was "unacceptable" (SOF ¶ 23). A4's claim, however, does not indicate the number of delay days or the amount of increased costs it claims it is entitled to resulting from the loss of this subcontractor (*id*.). Appellant's complaint provides little additional information (SOF ¶ 24). A4's delay claim and request for increased costs due to the loss of its concrete subcontractor must be dismissed for failing to state a sum certain. We strike paragraph 8(M) from the complaint.

### C. COVID Impact Claim

Finally, the government moves to strike appellant's complaint paragraph 8(A) in which A4 claims COVID-19 related time impacts (gov't mot. at 16-17). Appellant's complaint paragraph 8(A) states, "[A]mong other things, the project was delayed and impacted by: COVID-19-related impacts for which insufficient time was permitted, in violation of the OMB instructions" (SOF ¶ 4).

A4's claim asserts numerous COVID related impacts (SOF ¶¶ 4-8).[9] These impacts include a general claim for COVID related price and time adjustments (SOF ¶ 4) and alleged increased subcontractor costs including fire protection (SOF ¶ 5), electronic security systems (SOF ¶ 6), audio visual equipment (*id*.), and delays in obtaining roofing materials (SOF ¶ 8). While the claim included sum certain amounts for each of the increased subcontractor costs, it did not identify an amount for its own alleged increased COVID impact labor and material costs or indicate the alleged number of delay days A4 attributed to COVID (SOF ¶ 4). As such, it is impossible to determine the sum certain amount A4 seeks for its COVID impact claim. Since A4's claim for its COVID impacts clearly arose from grounds materially different from its other claims and involve different operative facts, we must dismiss this claim for failing to state a sum certain. The government's motion to strike complaint paragraph 8(A) is granted.

Because each claim must first be presented to a contracting officer with a sum certain to give them adequate notice of the claim amount and the opportunity to consider the claim, we strike complaint paragraphs 8(A), 8(H) and 8(M) and dismiss the claims presented therein to allow A4 to properly present the claims to the contracting officer for a decision. *See Creative Mgmt. Servs.,* 989 F.3d at 962; *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1331 (Fed. Cir. 2010) ("The purpose of this requirement is to encourage the resolution of disagreements at the contracting officer level thereby saving both parties the expense of litigation.")

V. <u>Government's Motion to Dismiss is Timely</u>

Appellant also asserts the government forfeited its right to challenge the claim's sufficiency since it waited too long to file a motion to dismiss (app. opp'n at 5-6). Appellant suggests the government forfeited its right to challenge the sum certain requirement since the contracting officer issued a final decision on the claim without questioning whether the claim contained a sum certain amount (*id*. at 6). In addition, appellant asserts it has been prejudiced by the government's delay in raising this issue since written discovery has occurred and the parties are now scheduling and taking depositions (*id*. at 5).

Appellant correctly notes that the government can forfeit its right to require a contractor to comply with the sum certain mandatory claims-processing rule if it waits too long to invoke the rule. *ECCI*, 79 F.4th at 1379. The Board has found that the government forfeits its right to challenge a contractor's satisfaction of the sum-certain requirement when it waits until after a hearing on the merits to request the dismissal. *ECC International Constructors, LLC*, ASBCA No. 59643, 24-1 BCA ¶ 38,490

_____
[9] The government does not move to strike A4's COVID-19 related subcontractor claims included in its complaint at ¶¶ 8(C), (D), (E), (F) and (J).

at 187,085; *see also JE Dunn Construction Company*, ASBCA No. 63183, 24-1 BCA ¶ 38,478 at 187,025 (government forfeited its right to challenge contractor's satisfaction of the sum-certain requirement by waiting until after the hearing on the merits to request dismissal on sum-certain grounds).

In contrast, this appeal is still in the discovery phase. In its *ECCI* decision, the Federal Circuit noted the Supreme Court has not articulated precisely how long is "too long" for the government to raise a mandatory claims-processing rule as a defense before that defense is forfeited. *ECCI*, 79 F.4th at 1379. The Federal Circuit further noted, however, the Supreme Court has indicated a defense based upon a mandatory claims-processing rule raised as a failure to state a claim upon which relief can be granted, "could be raised, at the latest, 'at the trial on the merits.'" *Id*. at 1380 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) (quoting Fed. R. Civ. P. 12(h)(2))). The government correctly notes it raised the sum certain requirement seven months before the close of written discovery and 18 months before the scheduled hearing (gov't reply at 6). Here, A4 also has a recourse for filing a new claim with a clear sum certain for each distinct subclaim with the contracting officer. If the contracting officer denies that claim, the parties will be able to conduct discovery on the new appeal. We conclude the government has not forfeited its right to raise the sum certain requirement in this appeal.

## CONCLUSION

The government's motion is granted in part. Complaint paragraphs 8(A), 8(H), and 8(M) are stricken.

Dated: April 29, 2024

ARTHUR M. TAYLOR
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

15

I concur                                    I concur


_____                   _____
OWEN C. WILSON                              MICHAEL N. O'CONNELL
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals


        I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 63456, Appeal of A4
Construction Company, Inc., rendered in conformance with the Board's Charter.


        Dated:  April 29, 2024


                                            _____
                                            PAULLA K. GATES-LEWIS
                                            Recorder, Armed Services
                                            Board of Contract Appeals